## Reeves *versus* The Delaware, Lackawanna and Western Railroad Company.

Where no particular instructions are prayed, the court is responsible only for the general effect of their charge, not for particular sentences in it separated from the context. If as a whole the charge was calculated to mislead the jury, it is error, not otherwise.

The mere omission to say what might have been properly said, is no just ground of complaint by a party who submitted no points to the court.

If an injury results from the want of ordinary care of both parties, neither has a remedy against the other.

A party driving cattle along a road which is crossed by a railroad, at grade, has a right to presume that the servants of the railroad company will take all reasonable and proper precautions to avoid injury to those who are lawfully on the road.

It is negligence to approach such a crossing at a speed of 25 or 30 miles an

hour; and a party injured is not guilty of negligence in not anticipating and providing against such conduct on the part of the servants of the company.

A party lawfully crossing a railroad at grade with a drove of cattle, is not bound to give a signal to an approaching train. If necessary, it is the duty of the company to employ a person to give signals.

ERROR to the Common Pleas of *Susquehanna county.*

This was an action on the case, by Élisha Reeves against The Delaware, Lackawanna and Western Railroad Company, for killing and injuring the plaintiff's.cattle, whilst lawfully crossing the defendants' railroad.

The terminus of the defendants' railroad is at Great Bend, about two miles south of which it is crossed, at grade, by the Newburgh turnpike. Near this crossing there is a deep cut, and the railroad approaches it on a curve, so that it cannot be seen until almost at the intersection. For half a mile before coming to the cut, the railroad and turnpike run nearly parallel, about ten rods apart, and in plain sight of each other.

The plaintiff was driving a drove of nearly 300 head of cattle from Great Bend, along the turnpike; and if the train had been in time, the cars would have passed him at a point where there was no danger. When within about thirty rods of the crossing, the plaintiff inquired of an employee of the company, how soon the cars would be along. He was informed they were expected soon, perhaps in five minutes. The plaintiff said he would try and get his drove over; he thought he could get a part of them over, if not the whole. Before the train approached, he succeeded in getting over one division; and whilst a second division was approaching the track, the cars came in sight, at a rate of 25 or 30 miles an hour; the whistle was blown before reaching the crossing, and this so frightened the cattle that, in spite of all efforts to restrain them, they rushed on the track, and several of them were killed, and others bruised and mangled.

The court below (WILMOT, P. J.) delivered the following charge to the jury:—

" The plaintiff in this case claims to recover for an injury sustained by him, in consequence of the alleged negligence of the defendants' agents in running their cars; whereby several cattle were killed, others injured, and a part of his drove detained. It is of the first importance that the principles of law which control the rights, and fix the liabilities of parties, in cases of this character, should be clearly defined and well understood.

" Railroads have become a necessity of the age and country in which we live. In connexion with the electro-magnetic telegraph, they have worked a great revolution in the business, social condition, and life of our people. Over these roads is transported a vast amount of property; and whoever makes a journey of any extent, is compelled to trust his life upon them. When interests

of such magnitude are concerned, we have a right to demand that the greatest care shall be observed on the part of all, that neither life nor property be unnecessarily put in peril. Railroad companies should be held responsible for slight negligence on the part of their agents and employees, in behalf of the passenger against whom no neglect is chargeable; and the same rule should apply to the owner of adjoining lands, and those who travel the ordinary highways; but as between this latter class and the company, neither should be allowed to recover of the other, if the injury, in any degree, was the result of the negligence of the party who complains. The injury must result wholly from the negligence of the party complained against; if it proceed in any degree from the negligence of the party complaining, no action can be maintained. Such are the general principles of law touching actions of this nature, and these principles should be intensified rather than relaxed, in cases of the character immediately under consideration.

" The right of the public to travel on the ordinary highways is undisputed; but when one runs along in the vicinity of a railroad, and is frequently crossed by it, the traveller upon the former is bound to be mindful of the character of the travel over the latter— the immense weight of the trains—the powerful machinery and agent employed in running them, and the velocity at which they move—and to regulate his conduct accordingly. To come to the case in hand. The plaintiff is driving a large drove of near three hundred head of cattle along the turnpike, in the vicinity of the railroad of the defendants. He is bound to use greater care in the management of his cattle, than would be required were no such road in close proximity; for the obvious reason, that greater care is necessary for the security of his own property, and for the safety of the lives and property of others. He may not approach a crossing with no more precaution, than if he were liable to meet a stage coach. He should inform himself, as well as he reasonably can, of the time the trains are expected, and even subject himself to some inconvenience and delay, rather than incur the hazard of a collision. It is in the evidence, that the plaintiff made inquiry of a person employed on the road near the crossing, when the train was expected, and was informed that it was behind time, and liable to pass at any moment, and in his judgment would pass within five minutes; and that he advised the plaintiff not to attempt to pass over his drove: that the plaintiff replied he would risk it; that he could get part of the drove over, if not the whole, before the train would be along. This evidence, if believed by the jury, looks very much like a willingness on the part of the plaintiff to take upon himself the consequences of an experiment which he understood to be hazardous; and when such a responsibility is assumed, he who assumes it cannot complain when the disaster comes.

[Reeves *v.* The Delaware, Lackawanna and Western Railroad Co.]

" The head of the drove was some 30 or 40 rods from the crossing, at the time information was given to the plaintiff that the train was momentarily expected. Could be without serious inconvenience have stopped his drove ? If he could, it would seem but a reasonable requirement that he should have done so, and awaited a reasonable time the passage of the train. It is argued, however, that this could not have been done without great trouble, inconvenience, and delay; and such as ought not to be required of one in the circumstances of the plaintiff. If this be true, it would surely seem but a reasonable and proper precaution for the plaintiff to have sent a signal along the track of the railroad, so as to have notified the engineer of the danger, in time to enable him to stop his train before coming to the crossing; or at least to have requested the employee with whom he conversed to do so. It is claimed, that the plaintiff could not reasonably be required to stop so large a drove, when the head of it was within 30 or 40 rods of the crossing. There was, then, no way left for him but to advance; yet the train was momentarily expected, and the plaintiff was about to occupy the track of this railroad for a considerable period of time—he was about to pass over it a large drove, extending along the turnpike nearly a mile, and which it would probably take from twenty to thirty minutes to pass over. Under such circumstances, it seems to the court but reasonable that the plaintiff should have taken the precaution to send a signal along the track, so as to arrest the attention of the engineer, and enable him to stop his train in time to avoid an accident. This, however, is matter for your judgment and decision; we do not undertake to pronounce as a matter of law, that the plaintiff was bound to this course of action.

" Whether there was negligence or not, on the part of either or both of the parties, is, under the facts of this case, and the principles of law as laid down by the court, a question for the jury. We do not undertake to say, that this or that line of conduct amounts to negligence; but only to present for your consideration, our view of what, under the circumstances, would be reasonable and proper. The drove was divided into sections—doubtless a very proper arrangement—and the plaintiff seems to have decided upon his ability to pass over one or more of the sections, and in the event of the arrival of the train, to hold back the others long enough for the train to pass by. This plan would very likely have proved successful but for the fright given to the cattle by the locomotive and cars. That, however, was a contingency which, it seems to us, the plaintiff should have taken into consideration. He must have known the liability of cattle to become frightened by a locomotive and train of cars, and the utter impossibility of managing so large a number when affrighted. Much has been said of the conduct of the parties at the moment

[Reeves *v.* The Delaware, Lackawanna and Western Railroad Co.]

when the accident occurred. It would seem, that whatever negligence is properly chargeable upon either party, must have been anterior to this time. Doubtless, the plaintiff did all that could be required of him, after his affrighted drove rushed on the railroad track and locomotive. Indeed, those in charge of the drove were powerless, at such a crisis, to do anything; and so also, comparatively, was the engineer, after he had approached at full speed to within a very few rods of the crossing.

"It is claimed by the plaintiff's counsel, that the train was moving at an unusual and dangerous speed; that, in crossing a thoroughfare like this turnpike, the train should proceed so slowly as to be stopped, if necessary, at a moment's warning. We are inclined to the opinion, that a crossing of this character should not be approached at a speed of twenty-five or thirty miles the hour— that prudence, and a proper regard for life and property, would demand that the speed should be considerably abated; but to say, that the train should be brought to a rate of speed not faster than a man could walk, would be to lay down a rule that might seriously impair the value of the railroads to the public, and injuriously affect the business interests of the country.

"It is also urged, that the drove was for a long distance in full view of the engineer, and that seeing it approaching the crossing, with the head of the drove out of view, he was bound so to stop the speed of the train as effectually to guard against an accident. There is no positive evidence that the engineer saw the drove; he was on the opposite side of the locomotive, and his business, it is claimed, was to keep his eye on the track; but, assuming that he did see the drove, was it more unreasonable in him to suppose that those in charge of it, had taken the proper precaution, than it was for them to attempt to pass the drove over the railroad, under the circumstances shown in the evidence?

"It is further claimed by the counsel for the plaintiff, that the engineer sounded the whistle at an improper time, whereby the cattle became frightened, and the injury occurred. There is a discrepancy in the testimony as to this matter. You will say how the fact was. The case is left in your hands. In order to entitle the plaintiff to recover, you must find that the loss he sustained resulted from the negligence of the defendants' agents, and in no respect was attributable to his own."

To this charge the plaintiff excepted; and a verdict and judgment having been given for the defendant, the plaintiff removed the cause to this court, and assigned the following specifications of error:—

1. The court erred in charging the jury,—" if it (the injury) proceeded in any degree from the negligence of the party complaining, no action can be maintained; such are the general principles of

[Reeves *v.* The Delaware, Lackawanna and Western Railroad Co.]

law touching actions of this nature; and these principles should be intensified rather than relaxed, in cases of the character immediately under consideration."

2. Also,—"the right of the public to travel on the ordinary highways is undisputed; but when one runs along in the vicinity of a railroad, and is frequently crossed by it, the traveller upon the former is bound to be mindful of the character of the travel over the latter—the immense weight of the train—the powerful machinery and agent employed in moving them—the velocity at which they move—and to regulate his conduct accordingly."

3. Also in charging,—"it is in the evidence that the plaintiff made inquiry of a person employed on the road near the crossing when the train was expected, and was informed that it was behind time and liable to pass at any moment, and in his judgment would pass within five minutes, and that he advised the plaintiff not to attempt to pass over his drove; that the plaintiff replied he would risk it, that he could get part of the drove over, if not the whole, before the train would be along; this evidence, if believed by the jury, looks very much like a willingness on the part of the plaintiff to take upon himself the consequences of an experiment which he understood to be hazardous; and when such a responsibility is assumed, he who assumes it cannot complain when the disaster comes."

4. Also that,—"it would surely seem but a reasonable and proper precaution for the plaintiff to have sent a signal along the track of the road, so as to have notified the engineer of his danger, in time to enable him to stop his train before coming to the crossing; or at least to have requested the employee, with whom he conversed, to do so."

5. Also in charging,—"this plan would very likely have proved successful, but for the fright given to the cattle by the locomotive and cars; that, however, was a contingency which, it seems to us, the plaintiff should have taken into consideration."

6. Also in charging,—"but assuming that the engineer did see the drove, was it more unreasonable in him to suppose that those in charge of it had taken the proper precaution, than it was for them to attempt to pass the drove over the railroad under the circumstances shown in the evidence."

7. Also in charging,—"it is further claimed by the counsel for the plaintiff, that the engineer sounded the whistle at an improper time, whereby the cattle became frightened, and the injury accrued; there is a discrepancy in the testimony as to this matter; you will say how the fact was."

8. Also in charging,—"could he, without serious inconvenience, have stopped his drove? If he could, it would seem but a reasonable requirement that he should have done so, and awaited a reasonable time the passage of the train."

[Reeves *v.* The Delaware, Lackawanna and Western Railroad Co.]

*B. S. Bentley* and *R. B. Little*, for the plaintiff in error.

*W. & W. H. Jessup*, for the defendants in error.

The opinion of the court was delivered by

WOODWARD, J.—The errors assigned are not founded upon answers to specific instructions prayed for, but upon dismembered sentences of the charge. It is impossible to conceive of a more unsatisfactory mode of reviewing a legal opinion. It is neither analysis nor criticism, but rude surgery—mere amputation. No written document, not even that of inspired pens, can bear such mutilation. What the court became responsible for, no particular instructions being asked, was the *general effect* of their charge on the minds of the jury, and this is to be judged of, not by sentences culled here and there, but by the salient points of the charge, and the thoughts that permeate it through and through. If, *as a whole*, the charge was calculated to mislead the jury, there is error on the record; if not, there is none. Mere omissions to say what might have been properly said, are no just ground of complaint by a party who submitted no propositions, and suggested no views of the testimony for the consideration of the court. Judges are entitled to expect this kind of assistance from counsel, and when it is not rendered, counsel may still have the benefit of errors of commission, but they should not complain of omissions.

This case, though falling within a class that is becoming very numerous, under our extensive system of railroads, is in some of its features peculiar and difficult.

That the plaintiff had a right to travel the turnpike road with his drove of cattle, is not denied, but it is insisted that it was an extraordinary and unusual use of the highway, and should have been attended with a correspondent degree of care on the part of the drover.

A large drove of cattle is, it is true, an unwieldy body to manage, but we cannot regard its presence on the turnpike as extraordinary. To facilitate the driving of cattle to the eastern markets was one of the purposes for which so many turnpike roads, pointing westward, were built; and they have always been extensively used for this purpose. The railroad company were bound to take notice of this fact, when they located their road across the turnpike, and in its immediate vicinity for a considerable distance. They knew that large droves of cattle were accustomed to travel there; that drovers had the prior right; and the provision of the charter that the railroad should be so constructed as not to obstruct the travel on the turnpike, was declaratory of the plaintiff's common law right, which he enjoyed, in common with all the public, to travel the turnpike with droves as well as with teams.

Still he was bound to use reasonable care. The unquestionableness of his right of transit did not release him from the obligation

[Reeves *v.* The Delaware, Lackawanna and Western Railroad Co.]

of that degree of diligence and prudence, which men in his situation ordinarily exercise. He was a drover of a large herd of fat cattle; he was in the vicinity of a railroad on which locomotive trains are entitled and accustomed to run; he was approaching a crossing at grade; he knew that a train, that was behind time, was momentarily expected to be at that point. Such was his situation. Now whatever prudent men in general would do or forbear to do in these circumstances, was the rule by which the plaintiff was bound to regulate his conduct.

But one other circumstance must be mentioned as affecting the situation of the plaintiff, and entering into the rule of duty. It was his right to presume that the agents of the company would exercise reasonable care on their part in the conduct of the train. What was reasonable care on their part? They were the servants of a company who had located their railroad parallel to, and in the vicinity of a turnpike which they crossed at grade, and on which droves of cattle were accustomed to travel. The point of crossing was approached, by cars going south, through a thorough cut and curve. For some half mile before coming to the cut, the turnpike is in full view of persons on a train of cars, and the plaintiff's cattle were stretched along that part of the turnpike, and were therefore visible by the engineer.

Duties grow out of circumstances. And, in view of these circumstances, we have no hesitation in declaring that it was the duty of the engineer to observe the cattle on the turnpike, and to presume that the head of the drove might be at the crossing, or so near thereto as to make it prudent to moderate the rate of his speed in such degree as to give him entire control of the engine. It is said the engineer did not see the cattle, and could not look, because he had to keep his eye on the track. But that was because he was going too fast. Dashing forward with such Jehu speed as to be unable to see a drove of cattle half a mile long, was a very rash mode of approaching the crossing of a great public thoroughfare, which must be approached, as he very well knew, on a curve, and after issuing from a cut that would, more or less, obstruct his view.

Without laying down any general rule as to the manner in which that crossing or similar ones should be approached, the engineer was bound, in the circumstances of this case, to approach it at a perfectly manageable rate of speed, and what he was bound to do the plaintiff had a right to presume would be done. And the measures of precaution taken or omitted by the plaintiff, cannot be properly estimated without allowing him the full benefit of this presumption.

Such is the rule on common highways, as well as in river and ocean navigation. Each driver presumes every other whom he meets will keep to the right, and takes his own measures accord-

ingly. And so with sailing vessels. If both vessels have the wind free or abeam, they must both keep to the right. Each must calculate on this course being taken by the other. To avoid collision each must act according to rule, *and must presume that the other will do likewise:* Lockwood *v.* Lashell, 7 *Harris* 346.

Such being the relative positions, rights, and duties of the parties, the court, after stating the general principles of law applicable to actions of this sort, proceeded to explain the duties of the plaintiff—that he was bound to the more care from the close proximity of the railroad—to subject himself to some inconvenience and delay rather than incur the hazard of a collision, and that if he assumed the responsibility of crossing the railroad after being advised that the cars would be there in a few minutes, he cannot complain when the disaster comes—that if he could have stopped his drove without great inconvenience he should have done so, and if not, that it would have been a reasonable and proper precaution to have sent a signal along the track of the railroad so as to have notified the engineer of the danger—that the liability of the cattle to be frightened by the whistle was a contingency which the plaintiff should have taken into consideration—and assuming that the engineer saw the cattle it was referred to the jury to say whether it was more reasonable in him to suppose that those in charge had taken the proper precaution, than it was for them to attempt to pass the drove over the railroad under the circumstances.

In regard to the conduct of the defendants' servants, the learned judge said he was inclined to the opinion that a crossing of this character should not be approached at a speed of twenty-five or thirty miles an hour—that prudence, and a proper regard for life and property, would demand that the speed should be considerably abated.

The question of negligence in either or both parties was left to the jury, with the remark:—" We do not undertake to say that this or that line of conduct amounts to negligence, but only to present for your consideration our view of what, under the circumstances, would be reasonable and proper."

The charge undoubtedly leads to the conclusion that there was culpable negligence on both sides: on the part of the company, in not abating the speed of the train; and on the part of the plaintiff in not stopping the drove short of the crossing, in not sending a signal back along the road, and in not anticipating the effect of the whistle on the herd.

Yet, while this was the obvious tendency of the charge, culpable negligence was nowhere defined in it, either abstractly or concretely, on possible views of the evidence; but the jury were told very emphatically, as above quoted, that the court would not declare that this or that line of conduct amounted to negligence. The amount of it was, that the whole case was referred to the

[Reeves *v.* The Delaware, Lackawanna and Western Railroad Co.]

jury, to form their own notions of negligence, and to find whether it attached to both parties, with very explicit instructions that the plaintiff could recover only for an injury resulting wholly from the negligence of the defendants.

This was a very inadequate presentation of the case—inadequate chiefly in that it conveyed to the jury no comprehensive view of the respective rights and duties of the parties, and no just conception of the legal idea of negligence, as growing out of those rights and duties. It is usual, in the trial of such cases, to adapt the legal definition of negligence to such views of the facts in evidence as a jury may reasonably be expected to take, and then to refer the evidence to them to say where and to whom the negligence attaches. The chief fault of this charge is, that it did not so present the case; but for this omission, though a most material one, we cannot, consistently with the habits of the court, reverse the judgment. Nor for saying, what it was quite unnecessary to say, that the general principles of law were to be *intensified* in their application to such cases. These principles are sufficiently rigorous when properly applied, without any additional force or extra heat imparted to them. Yet an exceptionable observation of this sort is not sufficient ground for reversal.

There are, however, matters in the charge which we think were calculated to mislead the jury. From the course of observation in respect to the conduct of the plaintiff, the jury might well infer that he was bound to anticipate and provide against the high rate of speed with which the train approached the crossing. Nothing could be more erroneous. If that rate of speed was, under all circumstances, imprudent and unreasonable, the plaintiff was not only not bound to anticipate it, but he had no right to presume that the company would violate their rule of duty. To avoid collision, he was bound to do all that prudent men in general would do in his situation, and he was entitled and bound to presume that the company would do likewise. The question for the jury was, whether the plaintiff was guilty of negligence in *these*, the necessary and legal conditions of the case—not whether he was guilty of negligence for failing to guard against illegal and unauthorized conduct of the defendants, such as the learned judge seemed to think might be fairly imputed to them.

Another manifest error was in leading the jury to hold the plaintiff bound to send a signal along the road. There was no such duty on the plaintiff. He could neither control the employee of the company, who was at work near the crossing, nor had he himself any right to be upon the track, except for the single purpose of passing along the turnpike. Railroad tracks and trains are committed by law to the exclusive custody of incorporated companies and their accredited agents and servants. Strangers are not to intermeddle therewith. The law insists upon a clear

[Reeves *v.* The Delaware, Lackawanna and Western Railroad Co.]

track, and then it holds the company to a safe transportation. The right and the duty are reciprocal and correlative, and both are to be enforced with stern exactitude. If every volunteer may go along the track to give such signals as he thinks proper, confusion and disaster would be the frequent consequence, and there would be an end of the wholesome responsibility to which the interests of society require us to hold railroad companies. They are bound to employ all necessary agents, to instruct them properly in their duties, and to look to *them* for the performance of every act which the business of the road requires. If this occasion required signals, it was the business of the company's agent who was at hand, to give them; and it was a mistake in the court to think the plaintiff in fault for not giving them.

When we speak of the imperative necessity for a clear track, we mean to except, of course, crossings of public highways at grade, for, at such points, travellers have a right to be within the rails long enough to effect a passage across them; and in the case of this company, the legislature have reversed the rule, and forbidden the *company* to obstruct the *travellers'* highway. Still, even at such places, the traveller has the obligations of prudence upon him. He is bound to stop and look out for trains, and may not rush heedlessly, nor remain unnecessarily, on a spot over which the law allows engines of fearful power to be propelled by one of the most resistless agents of nature. Those who use both intersecting highways are bound to a reasonable measure of diligence; and where both practise it, collisions are impossible; else the law would not allow both highways to exist. One or the other would be abated as a common nuisance, if they could not coexist without the painful consequences which follow from collisions. The fact of collision, therefore, always proves culpable negligence in somebody; and, under proper instructions, the jury are to ascertain in this case who is responsible for it.

If it be found to belong to both parties, the court were right in saying the plaintiff could not recover. The rule is so held in this court, and generally in the American courts. The case of Beers *v.* The Housatonic Railroad Co., 2 *Am. Railway Cases* 114 (a case very like the present in many of its features), and some of the English cases therein cited, are perhaps exceptions. The ruling there was, that if the plaintiff could not, by the exercise of ordinary care, have avoided the injury, the want of such care on his part would not preclude him from a recovery. Such a mode of stating the rule involves the solution of a most difficult problem; for who is to say that an injury resulting from the actual want of ordinary care on the part of *two* parties engaged in different occupations at the same time and place, would certainly have resulted from the want of ordinary care of only *one* of those parties?

[Reeves *v.* The Delaware, Lackawanna and Western Railroad Co.]

I prefer our own mode of holding the law—that if the injury result from the want of ordinary care of both parties, neither has remedy against the other; but if it be not in any degree ascribable to the negligence of one party—due regard being had to all the circumstances of his position—he may have redress from the other.

With the principles in view that have been thus indicated, this case must go to another jury.

> The judgment is reversed and a *venire facias de novo* is awarded.