**KITZINGER v. GEO. V. CLARK CO., Inc.**

**No. 35.**

Circuit Court of Appeals, Second Circuit.

Jan. 19, 1945.

Louis Gischner, of New York City (Eugene Newman, Louis Gischner, and Lewis M. White, all of New York City, of counsel), for Stanley Kitzinger, bankrupt-appellant.

Riegelman, Strasser, Schwarz & Spiegelberg, of New York City (John F. Finn, Jr., of New York City, of counsel), for Geo. V. Clark Co. Inc., objecting creditor-appellee.

Before L. HAND, AUGUSTUS N. HAND and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question raised by this appeal is whether the referee in bankruptcy erred in denying a discharge to the bankrupt Stanley Kitzinger on the ground that the latter had obtained credit from the objecting creditor Geo. V. Clark Co., Inc., by making a materially false statement in writing respecting the bankrupt's financial condition, and whether the District Court erred in affirming the decision of the referee. We think that the financial statement was not false and that the bankrupt is entitled to a discharge.

Kitzinger was the president and a substantial stockholder of Golden Bear Cookie Co., Inc., to which the objecting creditor Geo. V. Clark Co., Inc., had sold containers for its products. Golden Bear Cookie Co., Inc., was indebted to the objecting creditor for the merchandise the latter had furnished on credit. On February 27, 1940 Kitzinger had given to the objecting creditor his guaranty up to $10,000 covering its account against Golden Bear Cookie Co., Inc. Golden Bear Cookie Co., Inc., wished to have its business with the objecting creditor continued and Kitzinger was asked by it to furnish a personal statement of his finances which he did furnish on May 1, 1941 on a printed blank of Golden Bear Cookie Co., Inc., in the following form:

Statement
GOLDEN BEAR COOKIE CO., INC.,
37-32 22nd Street
Long Island City, N. Y.
.................19

M    S. Kitzinger
Terms: ................
                                        5/1/41
        Trust Fund          43,998
        Liabilities app.      7,100
                Assets                36,898

The referee reached the conclusion that the foregoing statement was false upon the theory that it "was in effect a representation that bankrupt was entitled to the principal of a trust fund in the sum of $43,998.00 and owed debts in the amount of $7,100.00, leaving him with a net worth of $36,898.00", and that he "failed to disclose to the representatives of Geo. V. Clark Co., Inc. to whom he gave the statement that he had only a life interest in the said trust fund of $36,898.00." This seems to us a view that the record and indeed the general circumstances do not warrant. We regard the statement as showing on its face that the fund was not absolutely Kitzinger's but only one in which he had some beneficial interest. It might mean that he had no more than a life interest in the fund or it might mean that a contingent or vested interest in the principal would sometime come into his possession. He in fact became entitled to a distribution of capital on May 5, 1941 from the trust fund created by his father's will when he became thirty-five years of age but only to the extent of $8,000 or $9,000, a distribution which he used pro tanto to pay the indebtedness he had listed in the financial statement. He

had already told Hirschland, the secretary and treasurer of the objecting creditor, that "he was waiting for his May accounting from the Manufacturers Trust Co., he was going to receive a portion of a trust fund from the Manufacturers Trust, a portion of the principal, which he would then use to reduce our account." Hirschland also said in respect to the principal or income of the trust fund mentioned in the financial statement: "That was the principal of the trust fund and according to my understanding from previous conversations, Mr. Kitzinger told me that various portions of the trust fund were payable to him at different birthdays, twenty-fifth, thirtieth, thirty-fifth, something like that, and that the principal of the trust fund would be paid out to him on those birthdays, that various portions of the principal would be paid out. I don't know whether Mr. Kitzinger ever made the statement that the entire amount would be paid out, I can't recall that definitely, but I do know that large substantial payments from the trust fund were to be made at different birthdays."

Steeves, the president of the objecting creditor, testified among other things as follows:

"Q. You notice on the Exhibit the words 'trust fund' appear? A. Yes.

"Q. You know those funds did not belong to Mr. Kitzinger? A. No, I didn't know they did not belong to Mr. Kitzinger.

"Q. Did you ask what 'trust funds' meant? A. No.

"Q. Did you know there was a trust set up in the will of the late father of Mr. Kitzinger? A. He had so informed me.

"Q. And on which he received the income? A. No, that statement was never made to me.

"Q. Did you assume he was the owner of the trust fund when he gave you the statement? A. I assumed he was a participant in the income and the principal of the trust fund.

"Q. Did he ever tell you he was a participant in the principal? A. He never told me he was not."

It nowhere appears in the record that Kitzinger led the objecting creditor to believe that the trust fund belonged to him. Not only did the statement contain no such intimation but the creditor was informed that a partial distribution of capital was to be made on Kitzinger's thirty-fifth birthday and so far as was disclosed nothing further. The creditor was given the name of the trustee and doubtless could have ascertained from it all the details about the trust if it had chosen to make the effort. Indeed, the bankrupt himself testified that when Steeves accepted the statement he told him where the trust fund was and that he was free to make any inquiries. Of course we do not suggest that it would be a defense to a false statement that the maker had told his creditor that he was free to make further inquiries. But in the case at bar proof is lacking that the bankrupt intended to issue a misleading statement or that it was misleading in fact.

We accordingly hold that the orders of the District Court and the referee must be reversed and the discharge of the bankrupt granted.