**In re HAYDU.**

No. 49665.

United States District Court
E. D. New York.

July 14, 1952.

Samuel B. Ohlbaum, New York City, for bankrupt.

Otto A. Samuels, New York City, for objecting creditor, Esther Ungar.

BYERS, District Judge.

These are cross-motions, one for an order dismissing the petition for review and affirming the Referee's report, and the other for an order reversing the latter, which recommended that the bankrupt's discharge be denied. The specifications are three in number, and there are three subdivisions of the second. The Referee has sustained specification 1, dismissed 2(a) and (b), sustained 2(c) and dismissed specification 3.

The objecting creditor does not challenge the action of the Referee in dismissing as stated, and the question for decision then is whether specification 1, involving a materially false statement in writing for the purpose of obtaining money on credit from the National City Bank by the bankrupt as co-maker, is shown to be clearly erroneous. The Referee's report contains findings of fact and conclusions of law which accord with the testimony and exhibits in the case, and only a brief discussion is required in order to vindicate agreement with the Referee's views.

On April 2, 1951, the bankrupt signed a co-maker's financial statement for the purpose of enabling one Alfred Tannenbaum to obtain a loan from the National City Bank of New York and concededly the statement was false in two particulars: (a) as to the bankrupt's salary or wages which, according to the statement, amounted to $5,000 a year, while in fact the correct amount did not exceed $1,820; (b) that there were no judgments against him, while in truth there was an unsatisfied judgment in the sum of $7,050.51 in favor of the objecting creditor.

The argument for the bankrupt is that he signed the co-maker's statement in blank, that is to say, that the only non-printed matter appearing on the statement for which he should be held responsible is his signature, the authenticity of which is not disputed.

The bankrupt testified before the Referee on this subject, and the report of the latter contains the following:

"The bankrupt, upon whom was the burden of proving that he did not commit the act, failed to establish to my satisfaction that his signed statement was blank when the bank acted on it. It is significant that neither Leonard

Tannenbaum nor his father, who got the loan, was called as a witness by the bankrupt."

While the foregoing is not in form a finding of fact and it need not be so treated for reasons later to be stated, it nevertheless portrays the reason why a finding would not be justified in the bankrupt's favor on the narrow question of the contents of the statement as the bankrupt designed it to be submitted to the lender.

 I agree entirely with the Referee that the bankrupt should not be permitted to evade responsibility for the actual presentation to the lending agency of a statement containing materially false representations upon the specious argument that having signed the paper in blank he could wash his hands of it for all time; any such subterfuge would sanction a glib evasion of the plain responsibility that a business man must be held to assume when he participates in such a transaction as the procuring of a loan from a bank, either as maker or co-maker.

It is to be remembered in connection with this argument that the falsity of the statement, as to the actual wages or salary and the absence of any judgment against him, is conceded.

The cases relied upon will be found to be of little assistance:

Crue v. Timmer, 6 Cir., 119 F.2d 415, 416, involved a false statement of assets and liabilities signed by the bankrupt which was in fact "prepared by an agent of the objecting creditor who was fully informed as to the liabilities omitted therefrom, and there is no proof that the .statement was ever received by the creditor or relied upon in extending credit to the bankrupt".

No one argues that the bank prepared any part of this statement, Exhibit 1. The representative of the bank testified that the bank relied upon this particular statement along with the others in making the loan, and the best that bankrupt's attorney can say on the subject is: "The blanket assertion by the witness that he did rely thereon is gratuitous and contrary to all reason." That expression of opinion, of course, does not cancel the witness's testimony nor the Referee's finding.

Kitzinger v. Geo. V. Clark Co., 2 Cir., 146 F.2d 717, is quite remote in a factual sense. There the bankrupt signed a statement in which he referred to a trust fund and it appeared that the creditor did not seek information from the trustee, as it might well have, in an effort to ascertain the extent of the bankrupt's interest in that fund.

In re Roe, 2 Cir., 146 F.2d 266, was a case in which the court said that conscious falsification of a financial statement is a question of fact, and the ruling on the subject under review was not clearly erroneous. A similar view is required here in examining the Referee's report and the testimony on which it is based.

 Something is said about error on the part of the Referee in admitting this financial statement in evidence "in that it was not established that the document was signed by the bankrupt in the form in which it was offered." Since the bankrupt admitted that he had signed the paper, and since he conceded that it contained false statements, I agree with the Referee that the least he could have done to clarify the situation would have been to call either of the two men (Tannenbaum, father and son) as witnesses to testify to all of the facts attending the preparation of as well as the signature to the document in question; and there being no question as to the authenticity of the bankrupt's signature, I cannot believe it was error to receive the paper in evidence.

 The remaining argument has to do with the third subdivision of specification 2 as to making a false oath in this proceeding in that he failed to set forth his indebtedness of over $700 as co-maker under this very loan by the National City Bank in the sum of $1,080. The Referee states in effect that he was forced to conclude that the bankrupt knew of this liability, and that in failing to set it forth in his schedules he acted deliberately, and consequently the oath to the schedules was false. While the balance due was shown to be $270 at the time of the hearing (March 27, 1952), it is

a reasonable inference that when the petition was filed (October 6, 1951) the amount was larger than that.

Nothing is said on the bankrupt's behalf tending to demonstrate that, as to this specification, the report is clearly erroneous.

From all of the foregoing, it results that the bankrupt's motion arising on the petition to review is denied, and the objecting creditor's motion to dismiss the petition, and affirm the order of the Referee, is granted.

Settle order.