Max GROSSMAN, Appellant

v.

U. S. SLICING MACHINE COMPANY, Inc.

No. 15726.

United States Court of Appeals Third Circuit.

Argued May 3, 1966.

Decided Aug. 12, 1966.

Rehearing Denied Sept. 14, 1966.

Mitchell A. Kramer, Philadelphia, Pa. (Kramer, Krauss & Harrison, Philadelphia, Pa., on the brief), for appellant.

John B. Hannum, Philadelphia, Pa. (Pepper, Hamilton & Scheetz, Philadelphia, Pa., on the brief), for appellee.

Before FORMAN, GANEY and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

Plaintiff, Max Grossman (hereinafter appellant) is a citizen of New Jersey. Defendant, United States Slicing Machine Co., Inc. (hereinafter appellee) is incorporated and has its principal place of business in Indiana. Venue is properly laid in the Eastern District of Pennsylvania. In this diversity negligence action, the appeal is from a judgment entered in appellee's favor subsequent to a jury verdict exonerating appellee from liability and a denial of appellant's new trial motion.[1]

Appellant, a meat cutter by trade, injured his left index finger on a cutting machine, a specialized band saw, manufactured by appellee. The theory of liability was that appellee had failed to repair and service the machine properly, for the blade allegedly loosened while appellant was cutting meat, catching the meat and simultaneously pulling appellant's hand into the blade. The theory was sought to be proven by testimony expressing the frequency of difficulty had with the machine and the failure of appellee's repairmen to do more than tighten a screw each time a call was placed for repairs. Appellant also qualified a safety engineer as an expert witness on proper repair techniques of meat cutting machines. The expert testified that appellee had not properly repaired the machine. Appellee introduced contrary proofs on the above points.

Shortly after the accident appellant had given a two page statement to a Mr. Garrigle, a claims agent of the compensation carrier of appellant's employer. The statement was not in appellant's handwriting but his signature admittedly appeared at the end of the second page, subsequent to the language: "I have rad [sic] the statement on Page 1 & 2. It is true and correct." The first page contained appellant's initials, but he, in the course of recross-examination, volunteered a denial that the initials were his. The second paragraph of the first page of the statement, above the middle of the page, reflects that appellant allegedly told Mr. Garrigle that his hand *had slipped off the meat into the blade*. This was in contradiction to appellant's direct testimony that the *machine drew his hand into the blade*. Cross-examination elicited from appellant that the first words on page two were a continuation of the last words on page one. Appellant also testified on cross-examination that the observation appearing on page one that his hand had slipped off the meat was false. Neither appellant's nor appellee's attorneys pressed questions specifically inquiring whether appellant had in fact, regardless of the veracity of the statement, told Mr. Garrigle that which was claimed to be an inaccurate observation.

Appellee sought the introduction of this two page statement as direct evidence of that which caused appellant's mishap. Mr. Garrigle was in court but was not called by appellee to authenticate the statement. Appellant objected to its introduction on the ground that his mere admission that his signature appeared on the second page of the statement did not suffice to authenticate it as a whole, in the light of his testimony as to the inauthenticity of the first page. The District Court admitted the two page statement into evidence. Appellant largely

1. Grossman v. U. S. Slicing Machine Co., Inc., E.D.Pa., Oct. 18, 1965, 40 F.R.D. 24.

rests his appeal on his contention that the admission of the statement constituted reversible error.

■ In its memorandum denying appellant's motion for a new trial [2] the District Court agreed with appellee that it was not necessarily bound to follow the Pennsylvania rules of evidence [3] which, appellant argued, commanded the rejection of the proffered statement in the absence of an affirmative authentication by Mr. Garrigle. Rather it turned to Rule 43(a) of the Federal Rules of Civil Procedure which it held "makes evidence admissible if it would be admissible under any of the legal standards specified in that rule: (1) United States statutes; (2) preexisting rules of the United States equity courts; or (3) state rules of evidence. * * *" It cited the decision of this court in Wright v. Wilson [4] and correctly determined that in the federal courts, given a conflict between a state's and the federal rules of evidence, the rule that would admit the evidence is the one to apply.[5]

The District Court found that appellant had admitted that he had signed a "continuous integrated two page statement." Relying on Wigmore's statement that "proof of the signature of the document is sufficient to charge him" [6] the District Court confirmed its admission of the statement commenting:

"When a party denies making a statement * * * it is incumbent on him to come forward with proof that he has been misquoted or his statement tampered with in some manner."

It called attention to the fact that the scrivener was in court and could have been called as a witness to testify about the facts surrounding the document. The District Court concluded that the admitted signature on page 2 was sufficient to authenticate both pages of the document.

The appellee rests upon the position taken by the District Court. It also urges that the Court's judgment should be affirmed on the ground that there was no "denial that the statement was actually made by the appellant nor any allegation that the statement was incorrectly recorded by the scrivener. It is merely a denial that the accident occurred as set forth in the statement."

Initially turning to this point, at the trial the attention of the appellant was drawn to the statement [7] on cross-examination by the appellee. In response to his question as to whether the signature on page two of the statement was that of appellant the answer was in the affirma-

---

2. Ibid.

3. Lemmon v. Bufalino, 204 Pa.Super. 481, 484, 205 A.2d 680 (1964); Seckinger v. Economy Laundry, Inc., 133 Pa.Super. 414, 418, 3 A.2d 46 (1938).

4. 154 F.2d 616, 619, 170 A.L.R. 1237 (1946).

5. For related discussions see two cases recently decided by this court: United States v. 60.14 Acres of Land, 362 F.2d 660 (June 29, 1966) and Rain v. Pakov, 357 F.2d 506, 509–510 (1966).

6. VII Wigmore, Evidence § 2134 (3rd ed. 1940).

7. "Page 1
   "Gloucester Heights, N. J.
   July 7, 1961
   "I am Max Grossman, 31 years old, married live at 7 S. Richards Avenue, Ventura, N. J. employed as a meat cutter at Swift Economy Home Food Service, 105 Lehigh Avenue, Gloucester, N. J. have

worked there for about 9 months. Work from 9:00 A.M. to 6:00 P.M. and have from 1:00 P.M. to 1:30 P.M. or 2:00 P.M. for lunch. Am paid over $145.00 per week.
   "On June 5, 1961 at about 4:30 or 5:00 P.M. I was cutting meat on a stationary electric meat cutting saw when my left hand slipped off the meat and my second or middle finger struck the moving blade at the second joint. I am right handed. It bled but not profusely so I had it bandaged at work and a tourniquet applied by Carl Wenoff my employer. The bleeding stopped. I did not get to a doctor that day. Lou who is Carl's partner wanted me to go to a doctor that day. I stayed at work till quitting time. I came to work on June 6, 1961 but I couldn't work and spent the rest of the day here. That evening I called Dr. Stuart Mally, my family doctor, he was at the Shore Memorial Hospital so I went there where 12 stitches were taken.

690

tive. Thereupon counsel for appellee asked several questions based on the contents of the first paragraph of page one which were answered consistently. Then ensued the following interrogation:

"Q. 'On June 5, 1961 at about 4:30 or 5:00 P.M. I was cutting meat on a stationary electric meat cutting saw when my left hand slipped off the meat and my second or middle finger struck the moving blade at the second joint.' Is that true or false?

"A. No, the meat pulled my hand in.

"Q. Now wait. I just asked you that question. Is it true or false?

"A. It is false.

"Q. False?

"A. That's right."

Later, on re-cross examination, counsel for appellee inquired of appellant:

"Q. In other words, page 1 and page 2 are to be read together, and you signed page 2, which is a continuation of page 1, correct?

"A. It looks like it to me, that's right, although these are not my initials.

"Q. That isn't my question, sir. What I am saying—

"A. According to this one would go into the other, that's right.

"Q. According to this one would go into the other. And you signed page 2, which is part of page 1?

"A. I would say so."

Appellee argues that counsel for appellant could then have interrogated appellant more pointedly as to whether he denied having given the answer as contained in the statement and moreover since he had been made aware that Mr. Garrigle was present in the court room appellant's counsel could have called him

to the stand. The fact remains that counsel for appellee framed his only question concerning the vital answer within the narrow scope: "Is it true or false?" Viewing the response in the likely perspective of the appellant on the stand, it is not far fetched to interpret it as meaning that the answer was not made by him as recorded therein. In any event if it is an ambiguous response it is so because of the form in which the question was put. It is to be observed that appellee's question called for no response as to whether the written answer was given by appellant to Mr. Garrigle. Indeed, as far as the appellant is concerned, what with his direct statement that the purported initials on page one were spurious, the implication is plain that he disassociated himself from the answer contained on page one. Nothing more was done by appellee to identify appellant with that answer by further interrogation or by calling Mr. Garrigle, whose presence he, himself, had provided in the court room. We are not persuaded that the appellee is helped, as he suggests, by what at most can be characterized as an ambiguous response to his narrowly framed "true or false" question. We are then left with the ultimate question: whether the signature on the second page of what has been characterized as a "continuous integrated two page statement" is adequate authentication to warrant the admission of the entire statement into evidence under the circumstances of this case.

We have been unable to locate any authority in this Circuit either disposing of, or shedding light upon, the specific problem faced herein. We find of some value, however, two cases dismissed from consideration by the District Court on the ground that in them portions of the statements were excluded merely because they

Since then Dr. Mally has been treating my finger but he said that I will have to have surgery done to get the finger back to its former shape. I did not pay the hospital bill. Dr. Mally is going
(s) M. G.
"Page 2         7-7-61
to perform the surgery. He will have me

admitted to the hospital next Monday or Tuesday and has said that I will lose at least 2 weeks work. I never had any such serious accident while cutting meat.
"I have rad [sic] the statement on page 1 & 2. It is true and correct.
"(s) Max Grossman
"(s) John Garrigle"

"did not appear on examination to be encompassed by the signature." [8]

In Prevost v. United States [9] the appellant assigned as error the admission of two sheets of paper. On the first sheet appeared appellant's signed statement. The signature was admitted, although the statement was not written by appellant. The scrivener was not called to authenticate the statement. This statement appeared below a ruled line separating it from a lengthy caption appearing at the top of the page. The caption described appellant and certain alleged factual circumstances attendant to his giving the statement. The second sheet contained material not relevant to our problem. Appellant objected to the introduction of both sheets and objected separately to the introduction into evidence of the caption appearing on top of sheet one. The District Court found all the material on both sheets admissible. The Court of Appeals of the Ninth Circuit reversed. As to the first sheet it found that as the statement was signed by appellant, it was admissible into evidence. The scrivener's testimony apparently was considered unnecessary in the light of the admitted signature. However, as to the caption appearing at the top of the first sheet, the Court of Appeals found that it was not signed by appellant. Thus, even though it appeared on the same page as appellant's signed statement, the Court declined to impute to appellant his acknowledgment of the substantive matters specified in the caption.

The other case of some moment is Andrews v. Hotel Sherman, Inc. [10] The basic problem in *Andrews* is similar to *Prevost*. The District Court had excluded from evidence Andrew's registration card at another hotel. Appellant, Hotel Sherman, had offered the card for it contained a recital advantageous to it. Though Andrews admitted signing the card, appellee did not show that the recital on the card had been placed there by Andrews,

although the opinion does not indicate where Andrews challenged the statement. Under such circumstances, the United States Court of Appeals for the Seventh Circuit found the card's exclusion from evidence appropriate.

In contrast to these cases we find those cited and accepted by the District Court unpersuasive. In Michael v. World Insurance Company, [11] it was held that a confirmation of an interview signed by the plaintiff was admissible in evidence because it was proven that the plaintiff had signed it. The scrivener was apparently not called to authenticate the statement. However, there is no indication in the Court's opinion whether the admissibility of a single-page or multi-page writing was at issue, a possible critical factor. And in In re Haydu, [12] a bankrupt had admittedly signed a co-maker's financial statement, sought to be introduced into evidence, on which there were admittedly false statements. The text of the Court's opinion does not explicitly reflect whether the financial statement was a one-page document, although it is referred to as "the paper." The bankrupt argued that he had not made the statement but that he had signed the financial statement in blank. Finding that it was more easily within the province of the bankrupt in the situation rather than the bank, to produce witnesses as to the facts attending the preparation of the financial statement, the existence of the admitted signature, without more, was held to authenticate the statement.

There is a common thread which runs through the *Prevost, Andrews* and *Haydu* cases. All these cases reflect a pragmatical approach to the question of authentication. In *Prevost*, the lengthy caption was ruled inadmissible because the mere existence of the signature on the page upon which the caption appeared did not, in the concept of that Court, without more, reasonably indicate that the signatory's attention had been drawn to the

8.  Note 1 supra.

9.  149 F.2d 747 (9 Cir. 1945).

10.  138 F.2d 524 (7 Cir. 1943).

11.  254 F.2d 663 (5 Cir. 1960).

12.  105 F.Supp. 859 (E.D.N.Y.1952).

caption and that by his signature he affirmed the substance of it. The caption appeared at the top of the page. It was separated from the signed statement by a ruled line. The signatory's attention may never have been drawn to the caption, the substance of the caption not being something which it would be reasonable to expect a person would have been asked to affirm by his signature. Also, the opportunity for adding the caption to the top of the page subsequent to the signatory party's placing his signature on the page may have been a latent consideration. In *Andrews*, the same feature stands out as is present in *Prevost*. Language appeared on the registration card which it would not be usual for a registrant to include and attest by signature. Without further authentication in such a situation, the signature alone was held insufficient to qualify the statement as to its reliability. It was thus ruled inadmissible. In *Haydu,* the result was admissibility, but the approach of the Court appears to be similar to that taken in *Prevost* and *Andrews*. That a financial statement would be signed in blank and that the two witnesses friendly to the signatory who were in the best position to testify as to that circumstance were not called, persuaded the Court that the signature alone made the representations in the statement reliable in that case.

■ Applying the above approach to the instant problem we find the existence of a multi-page document, and the availability of the scrivener, circumstances which turn the case. The statement claimed to be false appears on page one of the document. The signature appears on page two, with but a conventional sentence above it to the effect that the signatory had read both pages. There is no other sign of authenticity on page one, appellant denying that the initials appearing thereon were his, and appellee not otherwise proving the initials were appellant's. Thus, the latent possibility exists that page one could have been altered, appellant denying the truth of the crucial statement thereon. The circumstances here involved, combined with appellee's faiure to call the scrivener then in court, constrains us to the view that there has not been sufficient authentication of page one of the document to meet even the federal evidence standard, and that its admission into evidence was prejudicial to the appellant.

Appellant also urges as error certain portions of the District Court's charge to the jury. The criticized instructions flowed from the evidence ruling with which we have differed. Since the case is to be remanded, on retrial the instructions will of course conform to the criterion for authenticity established herein.

The judgment of the United States District Court for the Eastern District of Pennsylvania will be reversed and the case remanded for a new trial in accordance with the above-expressed views.

GANEY, Circuit Judge (dissenting).

I dissent.

The question of admissibility of the document in question concerns itself solely with page 1. Page 2 thereof is an admitted authentic statement of the facts therein stated, since the plaintiff states that the signature at the bottom thereof is his, and there is no objection to its admissibility, which leads to the question here posed, as to whether page 1 was admissible likewise, which contained on it the initials of plaintiff.

I am agreed that there is a dearth of authority as to whether or not multiple page statements, such as obtain here, signed on the last page thereof, make the entire document admissible. However, this lack of authority, it seems to me, stems from the fact that it involves a question of evidentiary proof, which is neither novel nor new, by reason of the fact that courts, in construing the law of evidence over many years, have evolved certain procedural rules which are fairly common.

The cases cited by the majority, two in number, it seems to me are in no way apposite of the question here posed. In Prevost v. United States, 149 F.2d 247, relied on by the majority, the typewritten

statement was signed by the defendant and that portion of it was admissible, but the caption on the paper which had a line under it, that is between it and the statement itself, was held inadmissible, as the witness on the stand said he had never read it and, as a matter of fact, had never seen it until it was presented to him in court. Here, the plaintiff stated that he had read both pages 1 and 2 and that they were true and correct.

In Andrews v. Hotel Sherman, 138 F.2d 254, a registration card of the hotel, though signed by Andrews, showed admissions which were advantageous to the appellant and was offered by it in evidence. However, there was no showing that Andrews had either placed it there or had really read the contents thereof, so the court rightfully excluded it from the jury's consideration. However, later Pennsylvania cases, such as Geelen v. Pennsylvania Railroad Company, 400 Pa. 240, 161 A.2d 595, 91 A.L.R.2d 1, hold that where the testimony shows that the witness testified that after reading the statement, she unequivocally stated that it was a correct statement of the facts and that she had told them to the person who wrote them down, and there was nothing contained therein which was incorrect, made the writing admissible, and it was unnecessary to call the scrivener to the stand and prove the making or the execution thereof. This demonstrates clearly, in my judgment, that the courts of Pennsylvania hold that where there is no denial of the statement on a page and the witness admits to the content thereof, as well as the signature, that the document is admissible, without calling the scrivener, which is exactly the situation of page 688 herein. To the same effect is Beardsly v. Weaver, 402 Pa. 130, 166 A.2d 529.

We therefore start out with the unquestioned fact that page 2 is an authentic statement of the facts therein contained. Proceeding to page 1 of the docu-

ment, which is initialed, the witness was asked on the stand whether his statement that his left hand slipped off the meat while he was cutting it on a stationary meat cutting machine was true or false, and he stated that it was false, although he stated later on, when asked whether page 2, which he had signed, was a continuation of page 1, he answered that, "It looks like it to me, that's right, although these are not my initials." (Emphasis supplied.) Again, later on, when the question was posed to him, "According to this one would go into the other. And you signed page 2, which is part of page 1?", and his answer was, "I would say so." (Emphasis supplied.) This, it seems to me, can readily be construed as a fact that pages 1 and 2 were part of the same document or, at most, that it was a question of fact for the jury.

In re Haydu, 105 F.Supp. 859, 860, concerned a financial statement to a bank which was offered in evidence and the bankrupt admitted that he had signed the paper but alleged that the statement therein was false. However, the referee admitted the statement and held that it was up to the maker, the bankrupt, to call the person who prepared the facts contained therein in order to show the falsity thereof. This holding, while not one covering a multiple page instrument, is that the signer of an instrument alleging the contents are not his, is put to calling the person who prepared the facts therein, to prove the contents, that the facts were falsely placed thereon, in effect, that he who alleges fraud must prove it and, therefore, is in full accord with the position here taken. The mere denial of his initials on page 1 and that the statement on page 1 was false, is insufficient, in my judgment, to render the instrument inadmissible as a matter of law.

Furthermore, Rule 43(a) of the Federal Rules of Civil Procedure [1] holds that

1. This rule, in pertinent part, reads as follows:
"EVIDENCE (a) Form and Admissibility. In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All

evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence

in case of any conflict the rule that would admit the evidence should apply.

In my judgment, the fact that page 2 is an authentic statement by the plaintiff; that the statement therein said he had read pages 1 and 2 and they were true; that the document shows continuity of expression between pages 1 and 2; that the plaintiff himself said that one page went into the other and that he had signed page 2 which is a part of page 1, raised a presumption of genuineness of the document and presented a prima facie case, for validity thereof, which was not rebutted by a mere allegation of falsity. On the basis of the factual elements here, with this showing above made, by the defendant, it placed the burden of going forward—not the burden of proof—on the plaintiff to show that page 1 was fraudulent and, not having done so, the resultant statement in the document that page 1 was true, and its denial by the witness, raised a question of fact for the consideration of the jury.

Contention is made by the appellant that the question asked, whether the statement he had made on page 1 was true or false, was one which posed a very narrow issue to the plaintiff and that whatever ambiguity resulted therefrom was due to the narrowness of the question posed by the defendant. The simple answer to this is that the plaintiff's counsel could have taken the witness back and broadened the horizon of his inquiry to whatever limits he sought since the defendant, by asking the question, opened the door as widely as possible.

I am of the opinion that the submission of the document to the jury to determine the factual question therein involved was a correct one and I would, accordingly, affirm the judgment of the lower court.

applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most

convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner."