# The Pittsburg, Fort Wayne and Chicago Railway Company *versus* Dunn.

1. There was evidence that a road over a railroad had in 1856 been dedicated to public use by a landowner. In crossing the railroad on this road in 1866 his wagon was injured by the company's engine. The court charged: "If this strip of ground so thrown out was dedicated to the public use, without any intention of resuming the exclusive right to, or use of the said ground, and if from that time to this the public has used this as a public road, then it has become public, with all the characteristics of a public highway, so far as that question can have any legitimate bearing on this issue." *Held* not to be error.

2. The company constructed a "crossing" where the other road passed over the railroad; the road being a public one, it was the duty of the company to keep the "crossing" in such reasonable repair as to be safe and convenient for travellers to pass over: Per Hampton, P. J.

3. As a general rule a railroad company has a right to a clear track to run at a reasonable and ordinary speed; but where highways cross the track, neither the company nor the public have the exclusive right of a clear passage. Both are restricted by public necessity and convenience: Per *Id.*

4. When a traveller approaches a public crossing it is his duty to stop, look out and listen; if he fails to do so it is negligence, and he cannot recover for injuries, although the defendants may be guilty of negligence: Per *Id.*

5. If a traveller goes on to a track without negligence, and by defect of the crossing he is stopped on it, it is his duty to look out for a train and use all his efforts to give notice to one coming, and to extricate himself as speedily as possible, and if he fails in any one of these requirements, and the failure contributes to an injury, he cannot recover. Per *Id.*

6. It is the duty of those in charge of a train when approaching a public crossing to give notice by whistling, ringing the bell, or other device sufficient to warn of their approach, and in sufficient time to enable those coming to the crossing to stop in safety, or, if on the track, to get out of danger; also to look along the track, and if they see, or might see, by due care and caution, any obstruction on the track, to check the train by every means in their power: Per *Id.*

November 12th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the District Court of *Allegheny county:* No. 27 to October and November Term 1867.

The action was commenced in the court below on the 10th of March 1866, by William C. Dunn against The Pittsburg, Fort Wayne and Chicago Railway Company. The plaintiff declared in case, that the defendants negligently ran their engine against his wagon as he was crossing their railway on a public road; that the crossing for the road over the railway had been so badly constructed by the company, and was so much out of repair, that one of the wheels of his wagon got fastened between the rail and the planks of the crossing, so that he could not extricate it, and whilst in this situation a collision took place; by which one of his horses was killed, and the wagon and harness injured. The principal question, and the only one specially noticed in the

opinion of the Supreme Court, was, whether the road on which the plaintiff was travelling was a *public* road.

The testimony on this question was from Thomas Dunn, a son of the plaintiff. He said: " The road made down to crossing in 1853 or 1854 or 1855; runs over father's land; has been open to the public ever since; put up a permanent board fence on one side about 1866; fence on the other side, where it needed it, some time before that; planks between the rails were considerably higher than the rail; wagons have been caught there frequently; I spoke to the superintendent several times about the condition of this road, and told him it was dangerous, and he promised to repair it, but never did."

The plaintiff gave other evidence in support of the averments of his declaration.

The following points, raising the principal question, were submitted by the parties respectively:—

Plaintiff's points:

1. If the jury believe that the road leading down from the Beaver road to defendants' railway, and crossing their track at the place of collision, was at the time of its construction, and has been ever since, abandoned by the owner of the land which it traverses to public travel, without any intention on his part of subsequently resuming possession; this is such a dedication to the public use as rendered the road a public highway at the period of the collision.

2. If the road was a public highway, or if the crossing was constructed by the defendants, or even with their consent or knowledge, the plaintiff's property was lawfully on the track; and if the jury believe the construction of the crossing was faulty in any respect, thereby contributing to the disaster which occurred, the plaintiff is entitled to recover, unless also chargeable with negligence which concurred in causing the disaster.

Defendants' points:

5. The agents and servants of a railway company cannot be charged with carelessness in running their trains in accordance with appearances, which ordinary experience has shown to be safe for themselves and others; and if the collision happened by the plaintiff's wagon being arrested on the track by an unusual and unexpected cause of which the agents of the defendants were ignorant, plaintiff's driver was guilty of negligence in not warning the agents of the defendant of such difficulty, and, therefore, plaintiff cannot recover.

6. A road, laid out and opened by a private citizen, does not become a public road by nine or ten years' public use of it, so as to make it the duty of the railway company to maintain a crossing for it, unless the said company have special notice that it has become a public road.

[P., F. W. & C. Railway Co. *v.* Dunn.]

7. There is no evidence that it was the duty of the railway company to make or maintain the crossing at which the accident happened.

The court (Hampton, P. J.) charged:—

*    *    *    " Your first inquiry will be, whether this road and crossing were of such a character as to give the plaintiff a right to use it as he was doing, or, in other words, whether it was a public road in such a sense as that the company was bound to take notice of it.

" This brings up the question of dedication; that is, whether this road was originally dedicated, by Dunn, the owner of the land, to public use; and whether the public had accepted that dedication by adopting and using it for such a length of time as to give it the character of a public road.

" If this road was laid out by the owner of the land, and opened to public use as long ago as 1855 or 1856, and fenced on one side all the way, and on the other till it reached the bank where no fence was necessary, and if this strip of ground so thrown out was dedicated to the public use, without any intention of resuming the exclusive right to or use of the said ground, and if, from that time to this, the public has used the same as a public road leading to the defendants' station, then it has become public, with all the characteristics of a public highway, so far as that question can have any legitimate bearing on this issue.

" In answer to the plaintiff's 2d point, we instruct you, that if the road referred to was a public highway, and if the crossing was constructed by the railroad company, it was their duty to keep it in such reasonable repair as to be safe and convenient for travellers to pass over, and if they failed to do so, especially after being frequently notified of its condition, and if the injury here complained of was entirely the result of negligence, without any concurring negligence on the part of the plaintiff's servant, then they would be responsible for such damages as the plaintiff has sustained thereby.        *        *        *        *        *

" We come now to answer the defendants' points. The 5th point requires some explanation in order to make it strictly applicable to this case. As a general rule a railroad company has a right to a clear track, and to run their trains at a reasonable and ordinary rate of speed; but where public highways cross the track of a railroad, neither the company nor the public have the exclusive right to a clear passage. The rights of both are necessarily restricted by public necessity and convenience. This will be clearly understood by defining these rights and duties respectively.

" When a traveller on a public highway approaches a public crossing, it is his duty to stop and look out, and listen for trains

[P., F. W. & C. Railway Co. v. Dunn.]

before going upon the track, and if he fails to do so, such failure is not merely evidence of negligence, but the law declares it to be negligence, and prevents him from recovering damages he may sustain in attempting to cross, no matter whether the defendants are guilty of negligence or not, if such failure on his part contributed to his injury. But if he stopped and looked out, and listened for trains, and could neither hear nor see any one approaching, then he was at liberty to go on the track, and cross the same with all reasonable and proper speed; and if, by reason of any defect in the crossing, his wheels became fast in the rut, and he is stopped on the track, it is his duty to look out and watch for a train, and use all his efforts to give notice to any one coming of his position, and to extricate himself and get out of the way of danger as speedily as possible, and if he fails in any one of these requirements, and such failure contributes to an injury resulting from a collision, he cannot recover. .

" On the other hand, it is the duty of those in charge of a train of cars, when approaching a public crossing, to give notice, by blowing the whistle, ringing the bell, or such other device as may be sufficient to warn travellers of their approach, a sufficient distance from the crossing to afford time for all approaching to stop in a place of safety, or if on the track to get out of danger. It is also their duty to look along the track, and if they see, or might, by the use of due care and caution, see any obstruction on the track, to check up the train by using every means in their power, so as, if possible, to prevent a collision; and if they fail in any one of these duties, and injury results therefrom, without any concurring negligence on the part of the other party, the company is responsible."     *     *     *     *     *

The verdict was for the plaintiff for $358.28.

The defendants took a writ of error; and in several specifications assigned the charge of the court for error.

*J. A. Lowrie*, for plaintiffs in error, cited Act of April 11th 1848, Pamph. L. 1849, pp. 754–762; Ohio Railroad Law February 24th 1848, § 15, p. 761; Commonwealth *v.* Cole, 2 Casey 187; Schenley *v.* Commonwealth, 12 Id. 29; Mercer *v.* P., Ft. W. & C. Railroad, Id. 99; Union Canal Co. *v.* Pinegrove Tp., 6 W. & S. 560; Gowen *v.* Phila. Exch. Co., 5 Id. 141.

*J. M. Stoner*, for defendant in error, referred to Schenley *v.* Commonwealth, 12 Casey 29; Mercer *v.* P. Ft. W. & Ch. Railroad, Id. 99; Commonwealth *v.* Cole, 2 Id. 187; Foundling Hospital, 11 East 375, note *a*; Jarvis *v.* Dean, 3 Bing. 447; Irwin *v.* Dixon, 9 How. 10; Woodyer *v.* Hadden, 5 Taunt. 125; Hunter *v.* Trustees, 6 Hill (N. Y.) 407; Union Canal Co. *v.*

[P., F. W. & C. Railway Co. *v.* Dunn.]

Pinegrove, 6 W. & S. 560; Stafford *v.* Coyney, 7 B. & C. 257; Gowen *v.* Phila. Exch., 5 W. & S. 141; 3 Kent's Comm. 452 n.

The opinion of the court was delivered, January 7th 1868, by

Read, J.—In The Queen *v.* Inhabitants of Dukinfield, 32 L. J. N. S., Mag. Cases, p. 230, Mr. Justice Blackburn said: " The common law enabled any owner to dedicate land as a highway, and then at common law followed the consequence that it became repairable by the inhabitants of the parish or district." In Re Milford, 4 Barr 305, the court said: " The authority of the owner of a town plot to dedicate his ground to public use is as effective as that of the legislature ;" and in The Borough of Birmingham *v.* Anderson, 12 Wright 258, it is said: " It has been the practice in this country in laying out towns to have the plat surveyed and a plan made in accordance with the survey designating the streets, public squares and open spaces left for commons, wharves or any other public purpose. Those streets, squares and open spaces are thus dedicated to the public by the proprietors of the soil, whether they be the state or private individuals. When a town is situated on a navigable river, it is generally the custom to leave an open space between the line of the lots next the river and the river itself. This was done by William Penn in 1682 in the original plan of the city of Philadelphia on the Delaware front, and he called it a top-common, and in 1784, his descendants, the former proprietaries, in their plan of Pittsburg, adopted a similar measure of leaving such an open space, and they called it Water Street. In 1789 the proprietors of the land on which the city of Cincinnati is built pursued the same policy, and in their plan the ground lying between Front Street and the Ohio river was set apart as a common for the use and benefit of the town for ever." In Commonwealth *v.* Cole, 2 Casey 189, Knox, J., speaking of a road in Carbon county, said: " To prevent any future controversy, it is proper for us to add that the use of the ground by the public as a highway for more than twenty-one years made it a public road just as effectually as though it had been originally laid out and opened by the proper authorities." In Schenley *v.* Commonwealth, 12 Casey 29, a peculiarly strong case, my brother Strong said (p. 59) : " Wherever there is an actual giving of land for a public highway accepted by the public, though there be no deed, the dedication is complete."

The acceptance there was the user by the public.

Eight years is quite a sufficient time for presuming a dedication of the way to the public. In a great case, which was much contested, six years was held sufficient: 11 East 375 ; and in Jarvis *v.* Dean, 3 Bing. 447, Chief Justice Best said: " As it

had been used for four or five years as a public road, the jury were warranted in presuming that it was used with the full assent of the owners of the soil."

"If the act of dedication be unequivocal, it may take place immediately:" Woodyer *v.* Hadden, 5 Taunt. 126, per Chambre, J.; and "It may be established by acts unequivocal in their character on the part of the owner and the public, although occurring on a single day:" Hunter *v.* Trustees of Sandy Hill, 6 Hill 414.

The defendants in this case say the principal question is whether the road leading from the Beaver Road to the State Road and to the Remington Station, was a public or a private one, the company asserting it was a private road, and that the crossing over their railroad was a private one which should be kept in repair by the owner thereof.

The plaintiff alleged and proved that the road was laid out by him, the owner of the land, and opened to public use as long ago as 1855 or 1856, as testified to by the witnesses, and fenced on one side all the way and on the other till it reached the bank, where no fence was necessary, and the court, on this state of facts, charged the jury, if they believed these to be the facts, "and if this strip of ground so thrown out was dedicated to the public use without any intention of resuming the exclusive right to or use of the said ground, and if, from that time to this, the public has used the same as a public road leading to the defendants' station, then it has become public so far as that question can have any legitimate bearing on this issue. You will determine whether the facts are so or not."

We can perceive no error in this guarded instruction, for it is clear that so far as regarded the plaintiff and the public using it, it was not a private road but a public one, and was so treated by the defendants and the community.

The court further say: "In addition to the evidence introduced to show the laying out and fencing this road, the plaintiff called witnesses to prove that at or soon after the opening of this road by the plaintiff, the railroad company made a crossing of plank, but that it is improperly constructed because the edges of the plank were higher by an inch or more than the top of the rail, thus forming a groove or net between them, dangerous to the passage of wagons because the wheels, owing to the angle at which the road crossed the railroad, were liable to be caught and injured therein. That the officer in charge of that portion of the road was notified by different persons several times of the dangerous condition of the crossing and promised to repair it, but had not done so."

These facts the verdict of the jury fully established:—

1. That it was a public road and so treated by the defendants and the public.

2. That the crossing was constructed by the defendants and neglected to be repaired by them after full notice of its defects.

3. That it was dangerous and known to be so by the defendants.

The plaintiff's hired man was driving his team along this road with a loaded wagon, and when he came to the crossing could neither see nor hear any train approaching; he then attempted to drive across the railroad, but in doing so one of his wheels became fast in this groove, and while the driver was attempting to extricate it a gravel train belonging to the defendants came up the road, collided with the plaintiffs' team, and produced the injury complained of.

This statement and the very clear and lucid charge of the judge make it unnecessary to say more than that the errors assigned are not sustained, and that the defective state of the defendants' crossing being the cause of the injury suffered by the plaintiff, the

Judgment is affirmed.