## Geelen, Appellant, v. Pennsylvania Railroad Company.

Argued April 20, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and EAGEN, JJ.

*Joseph J. Malizia,* with him *John E. Rydesky,* and *Rydesky & Malizia,* for appellant.

*John D. Gresimer,* with him *Alfonse J. Straub,* for appellee.

OPINION BY MR. JUSTICE EAGEN, June 3, 1960:

James David Geelen was killed on a public railroad crossing when struck by one of the defendant's trains.

The plaintiff, administrator of the estate, brought a survival action on behalf of decedent's estate and a wrongful death action on behalf of those entitled to recover damages. The jury verdict favored the plaintiff; damages were awarded in favor of the widow, the children, and the estate. The lower court refused to enter judgment *non obstante veredicto* but did grant a new trial. This appeal questions the legal correctness of the court's new trial order.

The defendant railroad operates trains over a double set of tracks between Emporium, Pennsylvania, and Buffalo, New York. In Shippen Township, Cameron County, Pennsylvania, these tracks cross a public road which leads into the crossing on a steep incline and at a sharp angle. The roadway travels from the south in the same general direction as the tracks for a distance of several hundred feet. From the crossing looking up the tracks in the direction from which the train approached in this case, there is a clear, unobstructed view of over eighteen hundred feet. The crossing concerned was in a bad state of repair for two or three months before the day of the accident, a large sized hole having existed in the traveled portion of the roadway due to faulty construction and improper maintenance. A heavy accumulation of snow, allowed to remain on the tracks for more than twenty-four hours before the accident occurred, completely obscured the defective condition existing in the roadway. On the occasion involved, while the decedent was driving his automobile over the crossing, the left front wheel fell into this hole and the motor stalled. He was out of the car attempting to push it from the crossing, when he was struck by a two-unit Diesel engine, pulling one hundred and thirteen cars, and was crushed to death between the train and the automobile.

The court properly rejected defendant's motion for judgment *non obstante veredicto*. In addition to the

above facts, there was additional substantial proof which, if believed by the jury, warranted a conclusion of negligence in that decedent's presence on the crossing continued for sufficient time and under such circumstances as to provide the engineer of the train, if sufficiently alert, with knowledge of decedent's perilous predicament and with a reasonable opportunity to bring the train to a stop before it reached the crossing: *Kurtz v. Phila. Transportation Company*, 394 Pa. 324, 147 A. 2d 347 (1959); *Leghart v. Montour R. R. Co.*, 395 Pa. 469, 150 A. 2d 836 (1959). The evidence, concerning the faulty condition of the traveled portion of this public crossing, continued in for a long period of time before the accident, was also sufficient, in itself, to warrant a finding of causative negligence on the part of the defendant. A railroad company is under a duty to maintain a public crossing in a state of good repair: *P., F. W. & C. Railway Co. v. Dunn*, 56 Pa. 280 (1867); *Pro v. Pennsylvania R. R. Co.*, 390 Pa. 437, 135 A. 2d 920 (1957). In passing it is interesting to note that the crossing was uncontrolled by signals; it had neither gate nor light. The record fails to disclose sufficient evidence to overcome, as a matter of law, the presumption of due care on the part of the decedent: *Hugo v. Baltimore & O. R. R. Co.*, 238 Pa. 594, 86 Atl. 482 (1913).

The court below was, however, also correct in awarding a new trial. In determining whether or not a new trial shall be granted, the court below has great latitude in exercising wide discretion. On appeal such an order will not be reversed unless a palpable abuse of discretion clearly appears or unless an erroneous rule of law, which under the circumstances necessarily controlled the outcome of the case, is certified by the court below as the sole reason for its action or, without such certification, the court's opinion clearly indicates this to be the case: *Jess v. McMurray*, 394 Pa.

526, 147 A. 2d 420 (1959). The granting of a new trial will not be disturbed on appellate review unless the lower court in entering it acted capriciously, arbitrarily or improvidently: *Sames v. Wehr,* 373 Pa. 282, 95 A. 2d 654 (1953).

In the instant case, the decedent's widow was called by the defense for cross-examination and questioned concerning the details of a typewritten statement, the signature on which she acknowledged to be her own, executed about two months after the accident, containing a recitation of facts which were inconsistent with her lack of memory on the stand and with certain proof of the plaintiff as to the details and manner of the occurrence involved. The court admitted this statement into evidence for the limited purpose of affecting her credibility. This was error and, in itself, made a new trial necessary. Decedent's widow, while technically not a party of record in her individual capacity, was a party beneficially and directly interested[1] and her prior admissions or statements concerning material facts constituted substantive evidence. Such statements, thus proven, should be admitted as substantive proof of the facts asserted therein: *Morse Boulger Dest. Co. v. Arnoni,* 376 Pa. 57, 101 A. 2d 705 (1954). Counsel for the appellant argues that the statement was inadmissible for any purpose since the credibility of the signatory was not in issue, she having made no positive statement on the stand which could be said to have been in any way contradictory to those appearing in the statement and because the scrivener, an employee of the defendant, who was available in the courtroom, was not called as a witness to prove that the state-

---

[1] She was not a party to the record because Pa. R.C.P. No. 2202 (a) requires such an action, if instituted within six months of the death, to be brought in the name of the representative of the estate.

ments recited therein were in fact made. When the witness admitted that hers was the signature on the statement which stated, inter alia, that she had read it, and when she did not deny on the stand that the facts included therein were true or correct, or that she made such statements to the scrivener, this without more rendered the statement admissible. The fact that the person, who prepared the statement, was not called upon to explain the attending circumstances, did not affect its legal admissibility but was a matter for the jury's consideration in determining its probative weight, in light of the fact that some of the language contained therein may well cast doubt as to whose words were actually used in its preparation.

The widow had previously been called as a witness as part of plaintiff's case. The court limiting cross-examination of her to facts testified to on direct examination, not allowing counsel for appellee to cross-examine the witness with respect to the written statement, committed error. As pointed out above, she was to all intents and purposes a party to the action. "The rule that the scope of cross-examination may not properly exceed the scope of the direct is not applicable where a party to the action offers himself as a witness. He may be cross-examined freely as to any matter relevant and material to the issues": *Jess v. McMurray*, supra, at 527.

Since this case must necessarily be retried, we feel compelled to discuss other problems inherent in the case in order to prevent future error on the retrial of the action. We do not agree with the court below that the plaintiff's case was not established by the fair preponderance of the evidence. The number, or quantity, of witnesses offered by one side or the other, in itself, is not controlling on this question. The preponderance of evidence depends upon the quality, or credibility, and not upon numbers: *Hegarty et ux. v. Berger*, 304

Pa. 221, 155 Atl. 484 (1931). As indicated herein-before, the proof was sufficient to require a jury's determination of the merit of the cause.

Great stress will probably be made in the second trial that the presumption of due care on the part of the decedent is rebutted by the facts contained in the widow's statement concerning the happening of the accident, discussed at length hereinbefore. It will doubtless be argued that this evidence, if uncontradicted, convicts the decedent of contributory negligence in that he did not stop before entering upon the railroad crossing and that, therefore, as a matter of law, no right of recovery exists. The testimony of the witness, Marilyn Mawn, places decedent's automobile before the accident, on the railroad crossing at a time when the Diesel unit of the train was nine hundred to one thousand feet beyond the whistle stop above the crossing. There is testimony that the whistle stop is itself thirteen hundred and nine feet from the crossing. From this testimony, the jury could conclude that the decedent's automobile was on the crossing at a time when the front of the train was over two thousand feet away. The engineer testified that the train in view of its then speed could be stopped within a distance of six hundred or seven hundred feet. This made the question of wanton misconduct one for determination of the jury. The following colloquy between counsel for plaintiff and the "trainman" who was "in the Diesel loading unit" at the time in question seems to lend considerable support to this proposition. "Q. Mr. Franklin, from the moment, whatever that moment was, when you first saw Mr. Geelen and his car on the crossing or when his tire wheels was near the western-most track, was the speed of the locomotive decreased, increased or did it go along about the same speed? A. I would say there was very little change in the speed. Q. Now, Mr. Franklin, can you estimate the

speed of the train at the time you gentlemen first recognized that Mr. Geelen and his car fouled the crossing or were on the crossing or near the rail? A. I'd say about thirty miles an hour." Of course, wanton misconduct is substantially different from simple negligence and even gross negligence, not only in degree but in kind. In order to exist it must be found that the engineer, in this case, had *actual* knowledge of the decedent's peril for a sufficient length of time before the accident to give him a reasonable opportunity to stop the train and avoid the accident and, despite this *actual prior* knowledge, the engineer manifested a reckless disregard of decedent's danger. However, this actual knowledge on the part of the engineer may be deduced from the facts present herein: *Kasanovich v. George,* 348 Pa. 199, 34 A. 2d 523 (1943); *Peden v. Baltimore & Ohio R. R. Co.,* 324 Pa. 444, 188 Atl. 586 (1936). If wanton misconduct is found to exist, then of course, contributory negligence on the part of the decedent cannot prevent plaintiff's recovery.

Moreover, assuming that the jury concludes that the engineer was not, in fact, guilty of wanton misconduct, but does believe in toto the facts testified to by the witness, Marilyn Mawn, would the fact that the decedent did not stop before entering upon the crossing, assuming this to be true, be a causative factor of the accident? We think not and, if this is so, it would not, in itself, prevent recovery as a matter of law: "In order to constitute contributory negligence which defeats recovery of damages for injuries arising from the negligence of another, the injured person's negligence must have been a juridical cause of the injury, and not simply a condition of its occurrence": *McFadden v. Pennzoil Company,* 341 Pa. 433, 19 A. 2d 370 (1941). In assessing decedent's contributory negligence, the factors discussed in *P., F. W. & C. Railway Co. v. Dunn,* 56 Pa. 280 (1867) would be relevant and material. It

would appear to us that decedent's failure to stop before entering upon the crossing did not, under the unusual circumstances existing here, in any way contribute to the accident. Had he looked at that time he could not have seen the train because, at that moment, the train was not yet around the bend. It was in fact out of possible sight thousands of feet away.

Nor do we attach much weight to the lower court's conclusion that the testimony of the witness, Leslie P. Geelen, was incredible. While testifying, he was questioned as to certain allegations included in the formal complaint filed in this action to which he, as the nominal plaintiff, made an affidavit of truth and correctness on information received. He was unable specifically to name the individuals from whom he gained the information upon which these allegations were made. This situation is not unusual and certainly does not warrant the legal conclusion that his testimony in regard to other factual matters is incredible.

An examination of the record does not compel the conclusion that the court below abused its discretion in awarding a new trial.

The order is, therefore, affirmed.

Mr. Justice BELL concurs in the result.