**Frank MAHON**

v.

**The READING COMPANY, Appellant.**

**No. 15431.**

United States Court of Appeals
Third Circuit.

Argued Jan. 4, 1966.

Decided Oct. 11, 1966.

---

10.  Neither defense was set forth nor referred to in defendant's pleadings.

John R. McConnell, Philadelphia, Pa. (Morgan, Lewis & Bockius, Philadelphia, Pa., on the brief), for appellant.

James E. Beasley, Philadelphia, Pa. (Sheldon L. Albert, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, GANEY and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

Frank Mahon brought the action here involved under the Safety Appliances Acts in the United States District Court for the Eastern District of Pennsylvania. He sought damages for a neck injury sustained by him on June 21, 1960, while he was applying a gondola car brake wheel which he alleged did not work properly during a shifting movement of freight cars. He received a verdict and the defendant railroad appeals from the denial of its motion for a new trial. The railroad claims that the trial court erred in denying its motion for a new trial because its right of cross-examination was unreasonably curtailed regarding three facets of the case, and in refusing its request for charge.

At the trial plaintiff testified on his own behalf that as a result of the injury he received on June 21, 1960, he suffered pain in his neck which caused him to lose a number of working days over a four-year period. He also revealed that he had been previously injured in an automobile accident in June of 1952, approximately eight years before the accident in suit and twelve years prior to trial, but that he had never injured his neck before. He told the jury that the scar on his forehead did not result from the automobile accident. On cross-examination, plaintiff admitted that he had been hospitalized for one day following the automobile accident. During this examination, a question seeking information as to whether the automobile accident was a "one-car" or a "two-car" collision, put to him by counsel for the railroad, triggered an objection by plaintiff's counsel on the ground of irrelevancy. Then the following colloquy ensued:

"THE COURT:—I would sustain the objection.

"MR. McCONNELL [counsel for the railroad]:—I think it might be interesting to know the extent of the injuries. It is cross-examination.

"THE COURT:—I know, and I would normally admit it, but at this point actually there is no need to go into an accident that happened in 1952.

"MR. McCONNELL:—I just thought it might be interesting to know the extent of the injuries at that

time and how they affect his body generally.

"THE COURT:—You could ask the question as to whether or not it affected his neck. He has already answered it.

"MR. McCONNELL:—I just want to cross-examine him on that point, if I can, Your Honor.

"THE COURT:—I will sustain the objection.

"MR. McCONNELL:—Is that to the line of questioning, that I may inquire, or not?

"THE COURT:—Well, I think there is not need in going into more details than have already been brought out.

"MR. McCONNELL:—This is an objection to the line of questioning, and Your Honor sustains it?

"THE COURT:—It is an objection to the line of questioning and I am sustaining that objection."

At sidebar, the railroad stated that plaintiff had not reported continuously for work prior to June 21, 1960, and advised the trial court that it desired to obtain from plaintiff the reasons for his failure to report for each of those days. The reason given for this proposed line of questioning was as follows: If the lost time was the result of an illness of plaintiff's, the jury had the right to infer that some of the lost days after the accident were also attributable to that illness. The trial court refused to permit the railroad to cross-examine on this facet because, in its opinion, any prior illness had no relevancy to lost time after the 1960 accident.

■ We disagree. Recently, this court, speaking through former Chief Judge Biggs, had occasion to state: "We realize that the right of cross-examination inheres in every adversary proceeding and that it is established beyond any necessity for citation of authorities, with certain exceptions * * *, that if cross-examination of an available witness is not had the litigant, deprived of cross-examination, has been denied due process of law." Derewecki v. Pennsylvania R. Co., 353 F.2d 436, 442 (C.A.3, 1965). The Supreme Court of Pennsylvania has repeatedly held that cross-examination of a party to an action is not a privilege but a right. Rich Hill Coal Company v. Bashore, 334 Pa. 449, 482, 7 A.2d 302 (1939). And that Court has enunciated the rule which is to be followed in this case.[1] In Jess v. McMurray, 394 Pa. 526, 527, 147 A.2d 420, 421 (1959), it stated: "The rule that the scope of cross-examination may not properly exceed the scope of the direct is not applicable where a party to the action offers himself as a witness. He may be cross-examined freely as to any matter relevant and material to the issues: Greenfield v. City of Philadelphia, 282 Pa. 344, 348, 349, 127 A. 768; Short v. Allegheny Trust Company, 330 Pa. 55, 59, 198 A. 793". Also see Geelen v. Pennsylvania R. Co., 400 Pa. 240, 246, 161 A. 2d 595, 91 A.L.R.2d 1 (1960); 41 P.L.E. Witnesses § 138. The importance and purpose of cross-examination are not to be minimized. See 5 Wigmore on Evidence (3d ed. 1940) § 1367, the first paragraph of which is cited with approval in Greene v. McElroy, 360 U.S. 474, 497, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

■■ Testimony of a prior illness is both relevant and material in a bodily injury action to an inquiry about later lost work time. Whether there is any causal connection existing between the two is for the jury to decide. The issue of relevancy and materiality should not be confused with that of causation. Of course an illness may be too trivial and too ancient to have any reasonable probative value on the issue before a jury. But that cannot be ascertained in some in-

---

1. See Rule 43(a, b) of the Federal Rules of Civil Procedure dealing with the form and admissibility of evidence, and the scope of examination and cross-examination. "In the event of a conflict between state and federal law, the rule which favors admissibility must be followed." Rain v. Pavkov, 357 F.2d 506, 510 (C.A. 3, 1966).

stances until after inquiry is made. We think the trial court committed reversible error in refusing to permit the railroad to cross-examine plaintiff, who appeared as a witness on his own behalf, on possible prior illnesses, and also about the automobile accident injury and the cause of the scar on his forehead. Segal v. Cook, 329 F.2d 278, 280 (C.A.6, 1964); Vona v. Sylvester, 22 Del.Co.Rep. 415 (C.P.Del.Co., 1930).[2] If it should turn out that the railroad's inquiries are nothing more than fishing expeditions, the journey will backfire in the eyes of the jury.

As adverted to in the beginning of this opinion, the railroad has claimed that two other rulings of the trial court were erroneous. Since the District Court will be directed to award the railroad a new trial, and the same pattern of events occurring in the last trial will in all likelihood take place in the next, if there is one, we think the judge at that trial should have the benefit of our views on the two remaining rulings brought to our attention.

Concerning information sought by him from plaintiff while he was still on the witness stand for cross-examination, counsel for the railroad advised the trial court in this fashion:

"Now I wish to ask the plaintiff whether or not he ever told anybody that he was able to work for any one or more of those 250 days,[3] and when

he answers that question I then wish to ask him whether he ever certified that he was able to work during one or more of these 250 days, and then I will wish to ask him whether he ever certified to the Railroad Retirement Board that he was so able during one or more of those days.

\* \* \* \* \* \*

"When he has answered that question, then I will ask him whether or not he will ask the Railroad Retirement Board to provide us with a record of the application he made, if any, and if he says yes, then I am going to ask the Railroad Retirement Board to give it to him now, because they are available to do so.

"\* \* \* I am doing this because I have reasons which seem good and sufficient to me to believe this man [no pun intended] did certify to the Railroad Retirement Board that he was physically able to work during the period in question, and on the basis of that certification obtain compensation for unemployment."

Counsel for the railroad later gave three reasons for the proposed line of inquiry. First, he wanted plaintiff to state what his claim against the railroad was, second, to explain why he was not working on the days claimed by him to have been lost, and third, the information about unemployment benefits[4] would impeach his credibility as a wit-

2. In the last cited case, plaintiff, Vona, sought damages for alleged injuries sustained by him from a collision between automobiles operated by the parties. The jury found for defendant, Sylvester. Plaintiff sought a new trial because the trial court had permitted defendant to cross-examine him "as to whether he had had other and recent automobile accidents prior to the one out of which the present action arose" for the purpose of ascertaining if such accidents had something to do with his then present physical condition. In denying the motion, the Common Pleas Court of Delaware County, Pennsylvania, said: "The fact that the questions were all answered in the negative does not affect their propriety \* \* \*."

3. When plaintiff was unable to state, in answer to the railroad's question as to

how many days he took off after the 1960 accident, plaintiff's counsel informed the court that he had subpoenaed the wage record and stated that he imagined [that] it will show the precise days plaintiff lost from work. At this point the court stated, "I would think counsel could agree on the question." Counsel then indicated that they expected to reach an agreement on the number of days. In the meantime the railroad's counsel used "250 days" as a tentative number for purposes of identifying the period of lost time after the 1960 accident.

4. The benefits referred to are apparently those payable under the Railroad Unemployment Insurance Act, 52 Stat. 1094, as amended, 45 U.S.C.A. §§ 351 et seq., for unemployment resulting from sickness as well as from unavailability of work.

ness because it would establish that he obtained them *at the very time he was not able to work.*

Without admitting it to be true, but assuming for the purposes of discussion, that plaintiff did file an application for such benefits, counsel for plaintiff objected to any inquiry about unemployment benefits because it would bring into evidence payment of money to plaintiff from a collateral source, and also put "plaintiff in a rather embarrassing situation to either agree to the request or to have to assert his privilege and say no, and by asserting his privilege he is going to be prejudicially affected in front of the jury." The privilege referred to is one which the plaintiff claims is given him by the Railroad Unemployment Insurance Act of refusing to disclose any information which is contained in the benefit payment records of the Board.[5] The trial court sustained the objection, and did not permit the questioning of plaintiff about whether he had made any statements on his ability to work for any of those days he claims to have lost because of inability to work due to sickness.

Ordinarily for purposes of impeachment it is permissible to ask a party on cross-examination whether he had, after the accident in suit, made a statement contrary to the position he takes on direct examination. 2 Henry on Pennsylvania Evidence (1953), § 815. But here we have a special situation: The purpose of the railroad in seeking permission to ask the question was to set the stage for asking him whether he filed an application for unemployment insurance benefits. According to the regulations of the Board under the Railroad Unemployment Insurance Act, a claimant who has properly filed an application for benefits because suitable employment is unavailable for him "shall initially be considered available for work."[6] The case of Eichel v. New York Central R. Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), was an FELA action wherein evidence was offered to show that Eichel was receiving monthly disability pension payments under the Railroad Retirement Act for the purpose of impeaching his direct testimony as to his motive for not returning to work and as to the permanency of his injuries.[7]

---

5. Section 12(d) of the Railroad Unemployment Insurance Act, 45 U.S.C.A. § 362(d), in pertinent part provides:

"Information obtained by the Board in connection with the administration of this chapter shall not be revealed or open to inspection nor be published in any manner revealing an employee's identity: *Provided, however,* That * * * (ii) the Board may disclose such information in cases in which the Board finds that such disclosure is clearly in furtherance of the interest of the employee or his estate; and (iii) any claimant of benefits under this chapter shall, upon his request, be supplied with information from the Board's records pertaining to his claim."

The Act has its own built-in false claims act, declaring it a crime for an employee to knowingly make a false statement for the purposes of causing benefits to be made under the Act. See § 9(a) of the Act, 45 U.S.C.A. § 359(a).

6. See 20 C.F.R. (Rev'd Jan. 1965) § 327.-10, 18 F.R. 8157, as amended, 20 F.R. 1015 (Feb. 17, 1955). Such a declaration is consistent with the authority grant-

ed by § 12(i) of the Act, 45 U.S.C.A. § 362(i).

To claim sickness benefits, an employee must file an application with the Board, and accompany his application with a statement of sickness executed by an individual authorized to do so. 20 C.F.R. (Rev'd Jan. 1965) § 335.102. The statement or statements may be accepted by the Board "as initial proof of days of sickness sufficient to certify for payment a claim for benefits." Section 12(i) of the Act.

7. For cases involving the *Eichel* situation, see for example Caughman v. Washington Terminal Co., 120 U.S.App.D.C. 217, 345 F.2d 434 (C.A.D.C.1965); Page v. St. Louis S. W. Ry. Co., 349 F.2d 820 (C.A.5, 1965); Traders & General Ins. Co. v. Reed, 376 S.W.2d 591 (Ct.Civ.App. Texas, 1964). In connection with the latter case see Kainer v. Walker, 377 S.W. 2d 613 (1964), wherein the Supreme Court of Texas ruled that evidence of payment from a collateral source is inadmissible unless the tender is properly limited and the jury instructed accordingly.

The Supreme Court held that the district court correctly ruled the evidence inadmissible on the ground that it was such that the likelihood of it being misused by the jury clearly outweighed the value of the evidence. Although the evidence in that case concerned benefits under the Railroad Retirement Act, it is our view that the spirit, if not the letter, of that case renders improper any cross-examination, which is in harmony with the law of Pennsylvania,[8] about filing an application for benefits under the Railroad Unemployment Insurance Act, and likewise the questioning concerning matters to be used as a foundation for such inquiry.[9] For additional holdings that evidence of a party's receipt of State benefits for lack of employment were inadmissible for any purpose, see Kurta v. Probelske, 324 Mich. 179, 36 N.W.2d 889,

893 (1949).[10] And in Carr v. Boyd, 1955, 123 Colo. 350, 229 P.2d 659, at 663, the Supreme Court of Colorado said: "* * * [I]t is established by the dominant weight of authority that any benefits paid by the Railroad Retirement Board to plaintiff in the case at bar cannot be taken advantage of by defendant to mitigate the damage *or otherwise.*" (Emphasis supplied.)

However, in Thompson v. Kawasaki Kisen, KK, 348 F.2d 879 (1965), the Court of Appeals for the First Circuit held that requiring the plaintiff to answer a question, thereby disclosing that he had received benefits from an unnamed source during his disability period, was proper because in actions not based on any federal statute, the district court is to follow the law of the state wherein the court is situated. There,

8. Regarding workmen's compensation benefits at least, Pennsylvania Courts follow the exclusionary rule. Boudwin v. Yellow Cab Co., 410 Pa. 31, 188 A.2d 259 (1963). There the trial court allowed evidence of payment of workmen's compensation benefits to plaintiff which had been offered for the purpose of attacking the credibility of plaintiff as a witness. In reversing with a venire facias de novo, the Supreme Court of Pennsylvania noted (p. 33, 188 A.2d p. 260): "Judges should be vigilant, in personal injury trespass cases, to keep out of the trial all references to benefits collaterally received by the plaintiff." But see Feeley v. United States, 337 F.2d 924 (C.A.3, 1964), where this court, through former Chief Judge Biggs, analyzes in a most painstaking manner the Pennsylvania authorities on the collateral source rule. At page 931 of that learned opinion, the court notes: "It is clear that Pennsylvania does allow double recovery where the collateral source is unemployment insurance. Lobalzo v. Varoli, 409 Pa. 15, 185 A.2d 557 (1962); Rice v. Shenk, 293 Pa. 524, 143 A. 231 (1928) (dictum); Labick v. Vicker, 200 Pa.Super. 111, 186 A.2d 874 (1962) * * *."

9. The chance of a double recovery is slight, for subsection (*o*) of § 12 of the Railroad Unemployment Insurance Act, 45 U.S.C.A. § 362(*o*) provides: "Liability of third party for sickness; reimbursement of Board (*o*) Benefits payable to an employee with respect to days of sickness shall be payable regardless of the liability of any person to pay damages for such

infirmity. The Board shall be entitled to reimbursement from any sum or damages paid or payable to such employee or other person through suit, compromise, settlement, judgment, or otherwise on account of any liability (other than a liability under a health, sickness, accident, or similar insurance policy) based upon such infirmity, to the extent that it will have paid or will pay benefits for days of sickness resulting from such infirmity. Upon notice to the person against whom such right or claim exists or is asserted, the Board shall have a lien upon such right or claim, any judgment obtained thereunder, and any sum or damages paid under such right or claim, to the extent of the amount to which the Board is entitled by way of reimbursement."

10. At page 894 of this case, the dissenting judge stated: "Plaintiff made statements to the unemployment compensation commission and on such statements obtained unemployment compensation, his statements being to the effect that he was offering himself continually for employment during the period for which he obtained unemployment compensation and that he was able to do the work for which he offered himself. On the witness stand in this case he claimed to the jury, obviously for the purpose of proving one element of damages, that he was laid up and incapable of working during the period covered by his compensation. His contradictory statements make his testimony unreliable."

that state was Massachusetts, where "evidence of receipt of collateral income is admissible 'to affect the weight of plaintiff's previous testimony that he was disabled from working on account of the accident.'[11]" (348 F.2d at 881.) But, in a personal injury diversity action based, among other things, on alleged negligence, in which the trial court allowed defendant to show that a workmen's compensation claim by a witness, not a party to the action, against his asserted employer, who happened to be plaintiff's employer, was then pending before the Illinois Industrial Commission "to show possible prejudice and bias" of that witness as an employee of that employer, the Court of Appeals of the Seventh Circuit, in holding that plaintiff was entitled to a new trial because of the admission of this and other evidence of similar import and purpose, said: "Though we can conceive of instances in which the compensation factor might have the effect of discrediting a witness, we think that the use of such evidence should be limited to instances in which possible bias is revealed by some act or factor more profound than the mere fact of employment by a particular employer." Concerning the effort on the part of defendant to show that if plaintiff had been paid workmen's compensation and that his employer would receive substantial sums if plaintiff was successful in this action, the Court also stated: "Unless such evidence has some legitimate purpose other than to advise the jury that a plaintiff has been partly paid for his injury, a strict exclusionary rule should be applied. * * * Indeed, we can conceive of few instances in which the value of such evidence would merit the effort of its producement if the evidence did not at the same time advise the jury that the plaintiff had already collected some money for his injury. * * *" Mangan v. Broderick and Bascom Rope Co., 351 F.2d 24, 29–30 (C.A.7, 1965).

Accordingly, the trial court did not err in refusing to permit the railroad to ask plaintiff regarding statements he might have made on his availability for suitable employment.

Finally, we come to the trial court's refusal to charge as requested by the defendant-railroad. At the close of the case, counsel for the defendant-railroad made this request of the court: "First, I respectfully request Your Honor to charge the jury as follows: I instruct you that under the rules of this court the defendant's employees and defendant's records are available to the plaintiff for examination in discovery prior to trial, and by subpoena for presentation at the trial." This request for instruction was objected to by counsel for the plaintiff and the trial court sustained the objection.

The posture of the case at this time was that the plaintiff had posed certain interrogatories to the defendant-railroad requesting it to state the dates of any repairs, alterations or modifications made to the gondola car and its brake system made, last preceding, and first following, this accident. The defendant answered, giving the plaintiff the dates of May 25, 1960, and June 22, 1960, further requested the names, addresses and job classifications of the persons making such repairs, alterations or modifications, and, in answer thereto, the defendant gave the names of three individuals. He additionally requested that if written records were made of these repairs, alterations or modifications, the present location of such records and the names and addresses of the persons having custody thereof should be stated and, in answer thereto, the defendant railroad replied that the place where the records were kept was the Port Richmond Car Shop, Foreman, C. E. Kline. Plaintiff's counsel took a pre-trial deposition of Clarence E. Kline at the close of which he asked for a copy of the inspection reports, but was told by counsel for the defendant that he could not make up his mind right then and added, "You know what the practice is." The position taken by counsel for the defendant was a proper one, for if counsel

11. McElwain v. Capotosto, 332 Mass. 1, 122 N.E.2d 901, 902.

wished to see the reports, he was required to show good cause.

In the examination of the various witnesses who had made repairs to the brake system and of those who were present when the repairs were made, counsel for the plaintiff never asked for the production of any reports. With respect to the witness, Cave, the following colloquy ensued between counsel for the plaintiff and the witness: [Mr. Beasley] "Q Now, there is a report before you marked D–1, is that correct? A Yes, D–1 is before me. Yes sir." Counsel for the defendant-railroad then said to counsel for the plaintiff: "Are you offering D–1 in evidence * * * ?", to which counsel for the plaintiff answered: "I haven't finished questioning yet." Further questioning by counsel for the plaintiff ensued concerning the examination of the brake, and counsel for the plaintiff asked: "And you filed a report concerning this?" The witness replied that he made a report for the superintendent's signature and while this questioning concerning the signature was had, counsel never asked the witness to produce it, though it was right before him on the stand and he must have known something of its content as he told the witness that the report had Mr. Cassidy's and Mr. McCormick's names on it, and the witness corrected counsel by saying that only the name of Mr. Cassidy appeared. Accordingly, it is obvious that counsel for the plaintiff knew what the report contained, or parts of it, and he could have had it merely for the asking. So it must be assumed that, as an experienced trial lawyer, he was aware that it would not have been helpful to him had he asked for it, although later it was agreed to and offered in evidence.

As to the witness, Levering, who gave a statement about the brake, at the conclusion of his deposition counsel for the plaintiff asked for his report and counsel for the defendant-railroad advised him that it was his understanding that it was not necessary to produce the report at that stage of the proceedings and that he would make no commitment for its production at that time. Levering testi-

fied that he never received a copy of his oral statement of the accident made over the telephone to the claim agent and, therefore, had none in his possession. At the trial of the case, though counsel for the plaintiff questioned Levering in detail about the examining of the brake, he never asked for the production of the report he made on it.

As to the witness, Cassidy, who was present at the inspection and examination of the brake, counsel for the plaintiff questioned him in great detail about the brake, but never asked him for the report other than to advise counsel for the plaintiff that the brake was sent to Reading for inspection.

Counsel for the plaintiff closely examined the witness, Grube, who made the inspection at Reading, Pennsylvania, and the record reveals the following with respect to this inspection: "Q Do you have your test report with you? A I don't carry no reports. I never made no reports. Q You never made any report? A No, sir."

It is evident, therefore, that counsel for the plaintiff never made any attempt to secure whatever reports were filed by the various witnesses who inspected the brake and he could have secured them from the railroad previous to trial by showing good cause and he could have subpoenaed them at the trial and since some of them were in the possession of counsel for the railroad and one of them, as adverted to above, was on the stand, he could have merely asked for it and defendant-railroad would have had to produce them. However, counsel for plaintiff, in his summation to the jury, repeatedly referred to the fact that the railroad had not produced these reports and, especially with respect to Mr. Grube, he argued to the jury as follows: "Mr. Grube testified that a couple months after he inspected this brake he retired, but in the period in which he inspected this brake, and the time he retired, he inpected about eighty other brakes. Now, where—where is the report of his inspection? Where, other than that little note that he had as a reminder—you will

remember that he had a little scratch-pad note with 3315 written on it—where other than that in that little reminder is his inspection report of what he did with this brake four years ago?"

It is difficult to see the validity of this comment to the jury or the failure of the railroad to produce Grube's inspection report when Grube advised counsel for the plaintiff definitely that he never made any such report. In turn, counsel for the railroad told the jury that all counsel for the plaintiff had to do if he wanted the reports, was to subpoena them.

■■ While the trial court's refusal to charge as requested can be sustained on the ground that the requested point for charge was not completely accurate in that it was partly wrong and partly right, plaintiff could not secure the reports previous to trial if he had wanted them by merely asking. He would have had to show good cause, under Rule 34 of the Federal Rules of Civil Procedure, for their production, for if he could not have shown good cause, the defendant's records were not available to him. The latter part of the request that they could have been produced by subpoena was correct and, therefore, the trial court's refusal to charge as requested was not error. Yoham v. Rosecliff Realty Co., 267 F.2d 9 (C.A.3 1959). There is no duty on the court to redraw requested instructions. Ursich v. daRosa, 328 F.2d 794, 797 (C.A.9, 1964); Nesbit v. Everette, 243 F.2d 59 (C.A.5, 1957).

■ The above reference to the testimony of the witnesses at trial, as well as their testimony taken by way of depositions, is adverted to because repeated contentions of both counsel with respect to the production of reports reached the jury, in our judgment, in such a state of confusion as to the necessity of producing them at trial and at pre-trial, that in the absence of any instruction by the court, with reference thereto, by way of explanation, which might guide them with respect thereto, was, in our judgment, clearly reversible error.

Since this case must go back for a new trial, if retried, a proper point may, in all probability, be submitted. It is therefore well to note that since the plaintiff knew of the existence of the reports, where they could be found and who the persons were who had possession of them, it will then be encumbent upon the trial judge to instruct the jury with respect to their production for, absent any such instruction by the court, as indicated above, the jury might infer the reports were damaging to the railroad, or that they were free to infer the contrary, or they might infer the contents were inconclusive, thus without being properly advised, a very confusing status would be posed for the jury.

The judgment of the district court will be reversed and the cause remanded for a new trial.

FREEDMAN, Circuit Judge (concurring in part and dissenting in part).

I agree that the judgment should be reversed and a new trial awarded. But I believe that on the retrial the defendant should be permitted to inquire on cross-examination if the plaintiff made any acknowledgment that he was available for work, which would contradict his testimony of inability to work as a result of the defendant's negligence.

I do not believe that Eichel v. New York Central Railroad Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) bars such an inquiry. It is true that it forbids evidence of benefits received under the Railroad Retirement Act [1] if offered in mitigation of damages and also bars their use as evidence of a motive for malingering by an employee asserting a claim under the Federal Employers' Liability Act. These restrictions, however, can be fully maintained while permitting the defendant to exercise a litigant's time honored right to elicit from a plaintiff his own contradiction of his claim of extensive injury. A trial judge has enough

1.  45 U.S.C. § 228b(a) (4).

discretion to establish adequate safeguards to exclude from the jury the prohibited information and yet at the same time admit relevant evidence.

I think such safeguards can readily be erected here while giving the jury the benefit of important evidence as to the extent of the plaintiff's injury. Since the court now excludes all of this evidence including what I consider the good along with the bad, I cannot agree with the restrictions imposed on the award of a new trial.