462 F.2d 266
 Walter BRIACH and Leona Briach, Administrators of the Estate
of Edward J. Mohar, Jr., Deceased, Apellants,
v.
PENNSYLVANIA RAILROAD COMPANY, a corporation, Appellee.
 No. 71-1348.
 United States Court of Appeals,
 Third Circuit.
 Argued March 17, 1972.
Decided June 13, 1972.
 
 1
 William S. Schweers, Harrington, Feeney & Schweers, Pittsburgh, Pa., for appellants.
 
 
 2
 Aloysius F. Mahler, Pittsburgh, Pa., for appellee.
 
 
 3
 Before MAX ROSENN and JAMES ROSEN, Circuit Judges, and VANARTSDALEN, District Judge.
 
 OPINION OF THE COURT
 
 4
 VANARTSDALEN, District Judge.
 
 
 5
 Edward J. Mohar, Jr., plaintiff's decedent, was killed when an automobile that he was driving on a public highway in Pennsylvania was struck by a railroad locomotive at a grade level crossing. Plaintiff brought action under the Wrongful Death and Survival of Actions statutes of Pennsylvania,[1] basing jurisdiction on diversity citizenship.
 
 
 6
 At the conclusion of plaintiff's case, defendant's motion for a directed verdict pursuant to Rule 50, Federal Rules of Civil Procedure (1970), was granted, the court being of the opinion that under Pennsylvania law, plaintiff's decedent was contributorily negligent as a matter of law. A summary of the evidence produced on behalf of plaintiff discloses the relevant facts.
 
 
 7
 Decedent was traveling alone in a general northerly direction on Harbor Road, which he entered from an intersection about 400 feet from the place of collision. A single diesel locomotive, traveling in reverse and going toward the east at a speed estimated by one witness to be about 50 miles per hour or better and "going faster than they ordinarily go," approached the crossing, without sounding any whistle, horn, bell or other audible warning. The railroad tracks crossed the public highway at approximately a right angle. There were no warning lights at the crossing but a cross-buck "railroad crossing" sign was located on Harbor Road immediately south of the crossing, and farther south was a highway railroad crossing warning sign.
 
 
 8
 Shortly before the day of the collision, Harbor Road had been relocated about fifty feet eastward in order to approach a newly constructed bridge that crossed a stream immediately north of the railroad crossing. At the time of the collision, the old trestle bridge formerly utilized by Harbor Road, was in the process of being dismantled, and metal portions of the bridge were being cut with acetylene torches, causing some smoke in the area. Heavy construction equipment was being operated in the vicinity along the river bank.
 
 
 9
 The collision occurred on the afternoon of December 16, 1966, between 1:00 and 2:00 o'clock. It was a cloudy day. Trees and underbrush extended along the west side of Harbor Road to within a short distance of the railroad crossing, thereby at least partially obstructing the view along the railroad tracks. The tracks to the west of Harbor Road curved to the north in an arc, whereby the view along the tracks, regardless of the point of vision, would be limited by the line of sight of the curve. One witness testified that a person would have to be within ten feet south of the tracks to obtain a clear view to the west along the tracks, and even then the view would be limited to about three hundred feet.
 
 
 10
 There was no eyewitness to the actual collision. Six workmen engaged within the general area testified. None heard any audible warning signal of the approaching locomotive, although they were in a position to hear.[2] The engine stopped at a distance estimated by witnesses varying from six hundred feet to four hundred yards east of the crossing; and the automobile about one hundred fifty feet east of the crossing.
 
 
 11
 Photographs taken within a few days after the fatality were introduced into evidence showing the immediate area of the crossing. Two aerial photographs taken more than one year after the collision were also received into evidence. About one month after the collision, some of the trees and underbrush shown in the ground photographs were removed. By the time the aerial photographs were taken, the old trestle bridge had been completely removed.
 
 
 12
 Defendant does not dispute that there was ample evidence to submit the question of defendant's negligence to the jury. A railroad has a duty to warn of an approaching locomotive or train at a grade level crossing, the adequacy of such being a matter for the jury under all of the surrounding circumstances. The warning must be timely and sufficient. Miller v. Pennsylvania R. R., 368 Pa. 507, 84 A.2d 200 (1951); Anstine v. Pennsylvania R. R., 342 Pa. 423, 20 A.2d 774 (1941). In addition to the testimony that no audible signal was given, and no railroad crossing lights were located at the crossing, there is testimony from which a jury could find that the locomotive, traveling in reverse, was going at an unusual and excessive speed. Although high speed of a railroad train in a rural area is not in and of itself evidence of negligence. Ealy v. New York Cent. R. R., 33 Pa. 471, 5 A.2d 110 (1939), it may be negligence when coupled with excessive and unusual speed. Haller v. Pennsylvania R. R., 306 Pa. 98, 159 A. 10 (1931).
 
 
 13
 The sole issue on this appeal is whether the decedent, as the driver of the automobile, was contributorily negligent as a matter of law. Some review of the Pennsylvania rule that requires a traveler to stop, look and listen before proceeding across a grade level railroad crossing of a public highway is appropriate.[3]
 
 
 14
 Development of the so-called "stop, look and listen" doctrine originated over a century ago. In Reeves v. Delaware L. & W. R. R., 30 Pa. 454, 72 Am.Dec. 713 (1858), the court determined that a traveler on a public highway "is bound to stop and look out for trains." Although that case, and other early cases left the determination of whether plaintiff was contributorily negligent for the jury,[4] the standard of care to stop and look soon became absolute, and failure to do so was negligence per se. North Pa. R. R. v. Heileman, 49 Pa. 60, 88 Am.Dec. 482 (1865). The next logical requirement was that one, having stopped, must also listen. This was engrafted into the rule by 1867 in Hanover R. R. v. Coyle, 55 Pa. 396 (1867).[5] In Pennsylvania R. R. v. Beale, 73 Pa. 504, 13 Am.Rep. 753 (1873), the court stated that the duty to "stop, look and listen" was an "unbending" rule of law and failure to comply with any one of the three absolutes constituted negligence as a matter of law. This "unbending" rule of law continues unchanged to this day. Tomasek v. Monongahela Ry., 427 Pa. 371, 235 A.2d 359 (1967); Wilson v. Pennsylvania R. R., 421 Pa. 419, 426-427, 219 A.2d 666 (1966); Yolton v. Pennsylvania R. R., 368 Pa. 429, 84 A.2d 501 (1951).
 
 
 15
 A further and often insurmountable hurdle to recovering damages for a person injured or killed while crossing railroad tracks originated in the oft-quoted language in the very brief per curiam opinion of Carroll v. Pennsylvania R. R., 12 W.N.C. 348, 349 (1882): "It is in vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive." Thus was born the "incontrovertible physical facts" doctrine convicting one of contributory negligence as a matter of law, if, as stated in Bornscheuer v. Consolidated Traction Co., 198 Pa. 332, 334, 47 A. 872 (1901), the evidence establishes "with the certainty of an infallible mathematical test" that the collision could not have happened but for the carelessness of the claimant because "it would be a travesty upon justice to allow a jury to consider such testimony, and a license to them to render a false, instead of a true, finding." This doctrine has been consistently and stringently applied. See MacDonald v. Pennsylvania R. R., 348 Pa. 558, 561-562, 36 A.2d 492 (1944);[6] Bernardi v. Pennsylvania R. R., 328 Pa. 373, 376-377, 195 A. 38 (1937).
 
 
 16
 There are several well recognized qualifications to the "incontrovertible physical facts" doctrine. First, the collision must occur immediately and instantaneously upon the injured or deceased claimant entering the tracks. This was probably first enunciated in Howard v. Baltimore & O. R. R. Co., 219 Pa. 358, 68 A. 848 (1908), where the horse drawn wagon was struck in the rear as it was leaving the last track. See also Cage v. New York Cent. R. R., 276 F.Supp. 778 (W.D.Pa.1967), aff'd per curiam, 386 F.2d 998 (3rd Cir. 1967). This doctrine is generally applied only to multiple track crossings.[7] See Baker v. Pennsylvania R. R., 369 Pa. 413, 85 A.2d 416 (1952), and cases therein cited.[8] Sturdevant v. Erie Lackawanna R. R., 458 F.2d 1214 (3rd Cir. decided April 13, 1972), (See cases cited at p. 268, n. 2). However, the doctrine that the collision must occur immediately upon entering the railroad right-of-way was utilized to prevent a non-suit, where the evidence showed that the automobile stalled on the railroad tracks. Geelen v. Pennsylvania R. R., 400 Pa. 240, 161 A.2d 595 (1960).[9]
 
 
 17
 Another important qualification to the Carroll doctrine is that if the asserted "incontrovertible physical facts" are based only on estimates of distances and speeds of moving objects, the determination is for a jury. Cunningham v. Pennsylvania R. R., 352 Pa. 571, 43 A.2d 825 (1945); Hegarty v. Berger, 304 Pa. 221, 226-227, 155 A. 484 (1931).[10] This qualification has been applied where, as in the present case, the physical facts are sought to be established by photographs lacking in precise measurements. Keasey v. Pittsburgh & L. E. R. R., 404 Pa. 63, 66, 170 A.2d 328 (1961). In Travis v. Pennsylvania R. R., 377 Pa. 537, 542, 105 A.2d 131, 133 (1954), the court stated that "the view of a photographer planted behind a tripod on terra firma is clearly quite different from that of a truck-driver sitting in the cab of his truck." In Cunningham v. Pennsylvania R. R., supra, 352 Pa. page 574, 43 A.2d page 826, the court emphasized: "Our study of the plan and the photographs convinces us that they do not establish, with unequivocal exactness, the distance which plaintiff could have seen along the tracks toward the east."[11]
 
 
 18
 The incontrovertible physical facts do not establish in this case anything approaching an infallible mathematical certainty that had decedent looked, he must have seen the approaching locomotive. There was considerable testimony that trees and underbrush along the highway obscured a clear view of the railroad tracks until one approached very close to the railroad crossing.[12] Travis v. Pennsylvania R. R., supra, explained the importance of any such obstructions in determining an issue of contributory negligence as a matter of law.
 
 
 19
 "Depending again on the angle from which one looks, it is common experience that the slightest intervening item can cover the largest distant object. Angled fingers can wipe out the horizon, while the hand held aloft can blot out the sun. It was strictly a question of fact for the jury whether the elderberry and sumac bushes shut off Travis' view of the railroad track with the train upon it." Id. 377 Pa. at 542, 105 A.2d at 133.
 
 
 20
 A decedent is presumed, in the absence of evidence to the contrary, to be free from contributory negligence. In Travis v. Pennsylvanina R. R., supra, the court stated that this presumption of due care
 
 
 21
 "is not a makeshift abstraction. It is a legal presumption based on the tenacious and objective reality that life is sweet and death is crual, and, in the case of railroad accidents, is founded on the unassailable logic that no one wants to engage in a duel with a locomotive." Id. at 541-542, 105 A.2d at 133.
 
 
 22
 As so colorfully stated in Keasey v. Pittsburgh & L. E. R. R., supra,
 
 
 23
 "[i]n the absence of evidence to the contrary (in the plaintiff's case) the presumption of due care includes, in a railroad crossing accident, the concept of stopping, looking and listening before entering on the tracks; it includes the concept of proceeding with care, the concept that the decedent obeyed whatever warning signals were visible or audible, and that he moved within the proper speed limits. Every rule that one can conceive which is designed to protect and preserve human life is presumed to have been respected by the decedent because although it is inevitable that everyone must eventually turn in his bat and glove, no one actually wants to hasten the end of the ball game." Id. 404 Pa. at 68-69, 170 A.2d at 331.
 
 
 24
 The Carroll doctrine may in a proper factual situation be applied against a decedent and cause the decedent to be found guilty of contributory negligence as a matter of law. Fidelity Trust Co. v. Pennsylvania R. R., 326 Pa. 195, 191 A. 609 (1937). The plaintiff in this case, however, was entitled to rely on the presumption of due care by his decedent. The trial judge in granting defendant's motion for a directed verdict laid great stress on the photographs, and particularly the two aerial photographs. They do not show, nor is there any evidence that determines exact distances. The photographs do not convict decedent of contributory negligence as a matter of law. If one had to stop within ten feet of the tracks to get a clear view, extending along the tracks for no more than three hundred feet, a locomotive traveling fifty miles per hour would allow between four and five seconds for the driver to start from a stop and completely cross the tracks. Whether failure to succeed in so doing was contributory negligence does not appear to be so clear as to constitute an incontrovertible physical fact. Especially is this so where no eyewitness testified as to the immediate happening of the collision.
 
 
 25
 Thus, the range of the view that decedent would have approaching the crossing; the effect of natural physical obstructions to that view; the speed and reverse direction of the approaching diesel locomotive; the lack of exact distances, measurements and speeds; the accuracy of photographs in depicting conditions as they existed at the time of the fatal collision and appeared to decedent-all were important considerations lacking in mathematical exactness, and demanded a jury's determination.
 
 
 26
 Applicable in this case is the familiar doctrine of law, as stated in Hugo v. Baltimore & O. R. R., 238 Pa. 594, 598, 86 A. 482, 483 (1913) that "[w]hen facts are disputed, or when different inferences may be drawn from them, it is the province of the jury to determine what the true facts are and what inferences they warrant." Indeed, in the present case, if the question of the contributory negligence of the decedent is not for the jury, it is difficult to conceive of any fatal railroad crossing collision in which no eyewitness is called that would permit a jury verdict in favor of a claimant. Pennsylvania case law does not exclude the determination of contributory negligence from being made by the jury, nor prohibit recovery as a matter of law, if the jury accepts the evidence presented on behalf of the plaintiff in this case.
 
 
 27
 The judgment is reversed and a new trial is directed.
 
 
 
 [1]
 Wrongful Death statutes: Act of April 15, 1851, P.L. 669, Sec. 19; Pa.Stat.Ann. tit. 12, Sec. 1601 (1953). Act of April 26, 1855, P.L. 309, Sec. 1 (as amended); Pa. Stat.Ann. tit. 12, Sec. 1602 (1953)
 Survival of Actions statute: Act of April 18, 1949, P.L. 512, Art. VI, Sec. 601; Pa.Stat.Ann. tit. 20, Sec. 320.601 (1950).
 
 
 [2]
 Such testimony has probative value. See Ferruzza v. Pittsburgh, 394 Pa. 70, 77-80, 145 A.2d 706 (1958), for discussion of Pennsylvania rule of negative versus positive testimony concerning audible warning signals
 
 
 [3]
 For historical background see Note, 54 Dick.L.Rev. 334 (1950); and Note, 13 U. of Pitt.L.Rev. 117 (1951)
 
 
 [4]
 Pennsylvania R. R. v. Ogier, 35 Pa. 60, 78 Am.Dec. 322 (1860); Philadelphia & Trenton R. R. v. Hagan, 47 Pa. 244, 86 Am.Dec. 541 (1864)
 
 
 [5]
 The defendants' point for charge on a duty to listen was affirmed in the cited case
 
 
 [6]
 In the cited case, the court approved the rule, but found it inapplicable to the particular facts
 
 
 [7]
 The present case involves a single railroad track line
 
 
 [8]
 E. g., Welsh v. Pennsylvania R. R., 313 Pa. 87, 169 A. 95 (1933)-(5 tracks); Mills v. Pennsylvania R. R., 284 Pa. 605, 131 A. 494 (1925)-(Double track)
 
 
 [9]
 In both Geelen and Mills, at n. 8, supra, the poor state of repair between the tracks and in the railroad right-of-way were noted as contributing factors
 
 
 [10]
 Cited case does not involve a railroad crossing
 
 
 [11]
 In the cited case, a measured scale plan was introduced into evidence; and significantly also involved a curve in the railroad tracks. No precise measurements were introduced in evidence in the instant case, and all estimates of distances were indefinite and uncertain
 
 
 [12]
 The photographs corroborated oral testimony as to existence of view-obstructing vegetation